**James Boyce TYSON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 12–90–00336–CR.**

Court of Appeals of Texas,
Tyler.

Aug. 16, 1993.

Rehearing Overruled March 16, 1994.

---

54

was before a jury which found Appellant guilty and assessed his punishment at seventy-five (75) years imprisonment and a fine of $10,000. We will affirm.

Appellant brings six points of error on appeal. In his first point of error, Appellant complains that the trial court erred by failing to grant a motion for an instructed verdict because the evidence presented was insufficient as a matter of law to prove that Appellant intentionally and knowingly engaged in the conduct alleged in the indictment. The indictment charged Appellant with committing the offense on or about the 18th day of October 1989 as follows:

> [W]ith intent to establish, maintain and participate in a combination with two and more of the following named persons, to-wit: KENNETH RAY TYSON, BETTY BRASHER KEAN, JACK LAMAR JARUS, CATHERINE SIGLEY DYKE, LINDA KIRBY ALDRIDGE, PEGGY SUE KOELMEL, PATSY TIDWELL WHITTENBERG, and THOMAS VINSON LEE, and in the profits of a combination with two and more of the afore-named persons, conspire and agree with one and more of the afore-named persons to commit and did commit the criminal offense of unlawful manufacture, delivery, dispensation, and distribution of a controlled substance, namely methamphetamine of less than 200 grams but at least 28 grams and unlawful possession of a controlled substance, namely methamphetamine of less than 28 grams through deception, and the said Defendant and one and more of the afore-named persons pursuant to said agreement, did then and there perform an overt act, to-wit: intentionally and knowingly possess a controlled substance namely methamphetamine of less than 28 grams. . . .

George O. Jacobs, Houston, for appellant.

Charles Mitchell, Dist. Atty., San Augustine, for appellee.

HOLCOMB, Justice.

This is an appeal from a conviction of engaging in organized criminal activity to which Appellant pled "not guilty." The trial

In reviewing a sufficiency of the evidence challenge, we are required to look at all evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Buxton v.*

*State,* 699 S.W.2d 212, 213 (Tex.Cr.App.1985), *cert. denied,* 476 U.S. 1189, 106 S.Ct. 2929, 91 L.Ed.2d 556 (1986). We have carefully reviewed the six volumes which contain the statement of facts and set forth all the facts in a light most favorable to the verdict.

Acting upon information received from informants, narcotics officers of the Texas Department of Public Safety (hereinafter "DPS") began an investigation of the occupants of motel room number 141 of the Day's Inn located in Lufkin, Texas. The motel room, registered to Peggy Sue Koelmel, was placed under surveillance. Numerous individuals were observed entering and leaving the motel room and testimony was offered at trial that this was consistent with narcotic trafficking. Around noon, an individual identified as Catherine Dyke left the motel room, in a leased 1989 Chevrolet. She was alone and drove to Arby's restaurant in Nacogdoches, where she parked beside a white 1989 Oldsmobile with dark tinted windows, registered to and driven by Betty Kean; Appellant was with Kean in the vehicle. Dyke got out of the Chevrolet and got into the Oldsmobile where she remained for approximately six (6) minutes. No one from either vehicle went into the restaurant. Dyke returned to her vehicle and drove by a circuitous route back to the motel room in Lufkin. Shortly after Dyke returned to the motel room she, Linda Aldridge, and Peggy Sue Koelmel packed their luggage, left the room and drove toward Houston in the leased Chevrolet. The officers decided they had probable cause to arrest Dyke. They had an arrest warrant issued and instructed a DPS trooper to stop Dyke, Koelmel, and Aldridge in the Chevrolet. A subsequent inventory of the car revealed an aggravated amount of methamphetamine and drug paraphernalia used in connection with the drugs found. Approximately three (3) ounces of methamphetamine were in a tupperware bowl.

Meanwhile back at the motel room in Lufkin, Patsy Tidwell Whittenberg and Thomas Vinson Lee were arrested. There, officers found additional drugs and paraphernalia. The motel records reflected that a call had been made from Room 141 to Betty Kean's telephone number in San Augustine, Texas.

An arrest warrant out of San Augustine County was issued for Appellant, James Boyce Tyson, because Dyke had told investigators that she bought the drugs from Tyson. When officers arrived at the location to arrest Appellant, he was there with his younger brother, Kenneth Ray Tyson, and his step-son, Jack Lamar Jarus. After he was arrested, a search warrant was obtained for the mobile home, which was located in a rural area of San Augustine County. Betty Kean was not present nor was her vehicle, the white Oldsmobile. A search of the trailer house revealed numerous glass beakers, metal tubing, wires, safety goggles, funnels, filter paper, walkie-talkies, vacuum pumps, cordless phones, heavy plastic and rubber aprons, a sawed-off shot-gun, three rifles, a pistol, a jug of distilled water and other paraphernalia. At trial, testimony was adduced that these items were used in the manufacture of methamphetamine. There was also a prevailing odor inside the trailer house identified as the odor emitted during the manufacture of methamphetamine. A beaker containing caffeine which is used as a "cutting agent" was found in a microwave oven. A small amount of methamphetamine was discovered in a door pocket of a 1974 Pontiac located on the premises. In a bedroom inside the trailer a plate and razor blade were found. Scrapings from the plate and razor were determined to be methamphetamine. Also found in the trailer house were informal documents reflecting Betty Kean had purchased the trailer from D. Webb, paying $200.00 dollars down, and subsequently paying $800.00 as payment in full. Appellant signed the pay-off slip as a witness. All three occupants of the trailer were arrested and placed in the San Augustine County Jail.

Betty Kean was later arrested at the jail when she went to visit Appellant. The subsequent search of her white Oldsmobile revealed a rental slip for a storage building located in Nacogdoches. A search warrant was issued for the storage building. As officers approached the storage building, they noticed the strong distinctive odor of chemicals used in making methamphetamine coming from it. After cutting a lock on the door to enter the building they discovered numerous flasks, extension cords, large glass beak-

ers, tubing, fans and heaters among other apparatus used in the manufacture of methamphetamine. The rental agreement was signed by Appellant, using the same address used by Betty Kean with the telephone company for her trailer house. Personnel at the rental facility identified Appellant as the individual who leased the building in June; all rental payments were paid with cash. At trial, the State called Catherine Dyke as a hostile witness. She admitted making the phone call to the San Augustine number for the stated purpose of meeting with Appellant's brother, Kenneth Ray Tyson, in Nacogdoches to give him $50.00. She said she was surprised when Appellant showed up. Dyke denied on the stand that she received the three (3) ounces of methamphetamine in a tupperware bowl from Appellant and Kean, and she also denied saying she had told officers that she had. The State was then allowed to present as impeachment evidence, testimony of two officers to the effect Dyke told them after she was arrested that she had purchased the three (3) ounces of methamphetamine in a tupperware bowl at Arby's from Appellant. This was corroborated by the officers report in which this was stated and used for probable cause for Appellant's arrest. Officer E.E. Wilkerson of the Pasadena Police Department testified that he knew Appellant and Betty Kean. Wilkerson testified they were common-law husband and wife, that they lived together in Houston where they had a house. Wilkerson also testified he had seen Appellant's brother, Kenneth Tyson, driving the Pontiac which was found at the trailer house.

■ Appellant first contends that the State wholly failed to prove, by sufficient evidence, the allegations made in the indictment. To be guilty of the offense of organized criminal activity as the statute was written at the time of the offense, the actor must have committed or conspired to commit one of the numerated crimes (i.e. Delivery of controlled substance) with the specific intent of participating in a criminal combination of at least three persons. TEX.PENAL CODE ANN. § 71.02 (Vernon 1989). *Barber v. State,* 764 S.W.2d 232, 235 (Tex.Cr.App.1988). A combination is defined as follows:

[T]hree or more persons who collaborate in carrying on criminal activities, although: 1) participants may not know each others identity; 2) membership (membership and the combination may change from time to time); and 3) participants may stand in a wholesaler-retailer or other arms length relationship and illicit distribution operations.

TEX.PENAL CODE ANN. § 71.01(a). "Conspires to commit" is defined as follows:

A person agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense and that person and one or more of them perform an overt act in pursuance of the agreement. An agreement constituting *an agreement constituting conspiring to commit may be inferred from the acts of the parties.*

TEX.PENAL CODE ANN. § 71.01(b) (emphasis added).

■ We find the evidence established, when viewed in the light most favorable to the verdict, that Appellant was first observed in the company of Betty Kean, his common-law wife, and Catherine Sigley Dyke. Dyke was found to be in possession of a large amount of methamphetamine and paraphernalia immediately after the three met. Dyke was connected to Aldridge, Koelmel, Whittenberg, and Lee. Appellant was arrested at the remote mobile home which circumstantially was proven to belong to his common-law wife. The vehicle in which Appellant and Betty Kean had been traveling earlier that day was not at the mobile home. Officers found methamphetamine in the black 1974 Trans Am Pontiac, which testimony revealed, was usually driven by Kenneth Ray Tyson. Also found in the residence in open view was a small but noticeable amount of methamphetamine, a set of scales, an assortment of glassware and other implements associated with a methamphetamine lab. Within the trailer there were smells usually associated with the manufacture of methamphetamine. Appellant was also connected, by direct and circumstantial evidence, with the rental facility in Nacogdoches containing enough glassware and apparatus to equip a methamphetamine lab.

Appellant's attorney at trial ably represented Appellant in pointing out that there were a lot of things that the officers involved in the investigation could have done better, such as testing for finger prints on the various glassware and apparatus found at both the trailer and the storage facility. However, as an appellate court, we are not in a position to second guess the fact finding of the jury. The charge to the jury read as follows:

In the application paragraph,

Now if you find beyond a reasonable doubt that on or about the 18th day of October, 1989, in San Augustine County, Texas as alleged in the indictment the defendant James Boyce Tyson did then and there with intent to establish, maintain or participate in a combination of two or more of the following named persons to wit: KENNETH RAY TYSON, BETTY BRASHER KEAN, JACK LAMAR JARUS, CATHERINE SIGLEY DYKE, LINDA KIRBY ALDRIDGE, PEGGY SUE KOELMEL, PATSY TIDWELL WHITTENBERG and THOMAS VINSON LEE or in the profits of a combination with two or more of afore-named persons, conspire and agree with one or more of the afore-named persons to commit and did commit the criminal offense of unlawful manufacture, delivery, dispensation or distribution of a controlled substance namely methamphetamine of less than 200 grams but at least 28 grams and unlawful possession of a controlled substance, namely methamphetamine of less than 28 grams, through deception, and the said Defendant and one or more of the afore-named persons pursuant to said agreement, did then and there perform an overt act, to wit: intentionally and knowingly possess a controlled substance namely methamphetamine of less than 28 grams, you will find the Defendant, JAMES BOYCE TYSON, guilty of the offense of engaging in criminal activity.

Viewing the evidence in its entirety, both direct and circumstantial and the inferences therefrom, we find a rational jury could have found the essential elements of the offense beyond a reasonable doubt as set forth in the court's charge. Appellant's point of error number one is overruled.

■ In Appellant's point of error number two, he complains of the prosecutor's argument as a comment on the failure of Appellant to testify. The argument of the prosecutor was:

I don't know of anything that points in any other direction which exonerates him of any of this. There hasn't been anybody come up here and testify: Well, he wasn't living in that mobile home, he didn't know what was going on out there, he was just passing through or he doesn't know what Methamphetamine is.

Whereon Appellant's counsel objected to the foregoing statement as a comment of the defendant not testifying; the court overruled the objection. Appellant argues that testimony answering these allegations could only come from Appellant, and no one else, and the phrase, "there hasn't been anybody come up here and testify" to those items that included the defendant in the term anybody. Appellant cites *Pollard v. State*, 552 S.W.2d 475 (Tex.Cr.App.1977). *Pollard* was an aggravated kidnapping case which did hold that no one, other than the accused, could have offered testimony to refute the victims account of her abduction and was an impermissible comment on Appellant's failure to testify since there were only two people there at the time of the abduction; the victim and the alleged perpetrator. Appellant further cites *Koller v. State*, 518 S.W.2d 373 (Tex.Cr.App. 1975) as supporting his position. In *Koller*, the prosecutor commented on the fact that no one ever stated that they were sorry for the killing. This was a clear, direct, or implied allusion to the failure to testify. Appellant further cites *Lee v. State*, 628 S.W.2d 70 (Tex.Cr.App.1982), in which the prosecutor in a prosecution for possession of a short barrel firearm stated in closing argument, "the only person that knows the motive or what he was really doing with this gun is that man." The Court held this to be impermissible as an indirect allusion or comment on the defendant's failure to testify. In the present case, as the State points out, anyone possibly could have testified that Appellant wasn't living at the mobile home or did not know what was

going on. We find that the prosecutor in the present case, used the third person pronoun when commenting on the fact that no witness was called to testify. It is not error for the prosecution to argue that a given defendant did not call witnesses to refute his theory of the case, *Satillan v. State,* 470 S.W.2d 677 (Tex.Cr.App.1971).

▮ For a statement to constitute a comment on the failure to testify, it must either be manifestly intended to be, or of such a character that the jury would naturally and necessarily take it to be a comment on the *defendant's* failure to testify; or the comment must call for denial of an assertion of fact or contradictory evidence that only the defendant is in a position to offer. *Losada v. State,* 721 S.W.2d 305 (Tex.Cr.App.1986); *Short v. State,* 671 S.W.2d 888 (Tex.Cr.App. 1984).

In the present case, one can assume from the record that there were persons who could have testified to the exonerating examples referred to in the State's argument, had such things been true. We find it was not an impermissible allusion to the failure of those persons to testify; therefore, Appellant's point of error number two is overruled.

In Appellant's point of error number three, he complains of the admission of documentary evidence of his prior conviction.

▮ After the Appellant had been found guilty, the court proceeded to the punishment phase of the trial, which was also before the jury. At this phase of the trial, after having read the enhanced portion of the indictment to the jury, the prosecutor called Officer Don Sparks as its only witness. The prosecutor presented a document, State's exhibit number 60, which was a pen packet and asked Officer Sparks if it included therein a photograph and asked him who was the person in the photograph and the officer replied that it was a photograph of James Boyce Tyson, the Appellant. No finger print evidence was offered from the pen packet to connect the Appellant with the person contained in the pen packet.

Using photographs to prove identity in order to admit pen packets has been specifically upheld in *Littles v. State,* 726 S.W.2d 26 (Tex.Cr.App.1984); *Gollin v. State,* 554 S.W.2d 683 (Tex.Cr.App.1977). In addition to the pen packet the State introduced State's exhibits 61, 62 and 63, which were exact copies of the judgments which were contained in the pen packet, as self authenticating under TEXAS RULE OF CRIMINAL EVIDENCE 1005. Pen packets in themselves are admissible and whether or not the individual as reflected in the pen packet is the same person as the one on trial is for the trier of fact. The jury could compare the photograph in the packet without testimony to determine whether it was the same person. Records, reports, and other documents of Texas Administrative bodies are admissible into evidence in criminal cases under TEXAS RULES OF CRIMINAL EVIDENCE 902(1), (2), (4), and 1002, 1005, 803(8). Appellant's point of error number three is overruled.

In Appellant's point of error number four, he complains that the trial court committed reversible error by allowing into evidence items and exhibits seized as a result of an arrest and search warrant which were invalid for the reason that they failed to reflect sufficient probable cause within the affidavit.

Prior to the trial, Appellant filed a motion to suppress the fruits of the search based upon invalid probable cause as alleged in the search warrant, relying on *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), on the grounds that the warrants were obtained by falsehood or reckless disregard of the truth. The trial court did not rule on these but carried these throughout the trial. Whenever any of these items were offered for admission they were objected to because of the lack of probable cause in the warrant. The hearing was held outside the presence of the jury in which a copy of the search warrant and exhibits were made a part of the statement of facts now before this Court. A copy of Exhibit A of the search warrant reads as follows:

#### EXHIBIT "A"

Your affiant, Don S. Sparks, is a certified police officer in the State of Texas employed by the Texas Department of Public Safety as a Sergeant Investigator assigned to the Narcotic Division, your

affiant has been a certified police officer for (26) twenty-six years.

On 10/13/89, Sgt. Inv. Ricky Allen, DPS Narcotics, received information from officer, Eddie Wilkerson, Pasadena Police Dept., Narcotic Division, Pasadena, Texas, said information being obtained from a confidential informant who has provided information to Eddie Wilkerson in the past which has proven reliable, and based on the details provided in this instance and corroborated by the affiant, that a Betty Kean and James Boyce Tyson of Houston, Texas were going to a location owned by Betty Kean's father in San Augustine County, Texas to set up a clandestine laboratory to manufacture methamphetamine. Officer Wilkerson further stated that Betty Kean would be driving a white Oldsmobile bearing Texas registration 794WLS.

On 10/18/89, your affiant, Don S. Sparks, Sgt. Inv. DPS Narcotics, observed Catherine Sigley Dike leave Days Inn Motel, Lufkin, Texas and travel to Arby's Roast Beef Restaurant parking lot in Nacogdoches, Texas and met with James Boyce Tyson and Betty Kean who were driving a 1987 white Oldsmobile bearing Texas registration 794WLS, registered owner listed as Betty Kean from Houston, Texas. Sgt. Inv. Sparks, later ascertained that Catherine Sigley Dyke obtained three (3) ounces of methamphetamine from Betty Kean James Boyce Tyson.

On 10/19/89, at the request of the Affiant, Sheriff Charles Bryan personally observed at the location described in paragraph 1 above, the 1987 white Oldsmobile bearing Texas registration 794WLS.

On 10/19/89, at approximately 2:45 p.m. your affiant was notified by Sheriff Charles Bryan that he and Officers of the DPS executed Arrest Warrants on James Boyce Tyson at the location described in paragraph 1 above. Affiant was told by Catherine Sigley Dyke that James Boyce Tyson lives and maintains a methamphetamine lab at this same location, and that is where Catherine Sigley Dyke has obtained methamphetamine on prior occasions.

The directions to the location described in paragraph 1 above were obtained gener-ally from Catherine Sigley Dyke and specifically from Sheriff Charles Bryan, who knows James Boyce Tyson and Betty Kean and the location of their residence.

■ Our review of the record demonstrates that all of the officers involved, Don Sparks, Ricky Allen, Marvin McElroy and Hershel Erwin of the DPS narcotics division and Eddie Wilkerson of the Pasadena Police Department, and San Augustine Sheriff Charles Brown were acting together cooperating and sharing information in regard to the investigation in this case. In *Woodward v. State*, 668 S.W.2d 337 (Tex.Cr.App.1982) it was held that where there has been cooperation between law enforcement agencies or between members of the same agency, the sum of the information known to the cooperating agencies or officers at the time of an arrest or search by any of the officers involved is to be considered in determining whether there was sufficient probable cause therefor. It was therefore proper for Sparks to sign the application for the search warrant and affidavit relying not only upon what he knew in the way of probable cause, but also upon the information provided by these other cooperating officers and agencies. Applying this standard, we hold that the information contained in the affidavit taken as a whole shows probable cause for the search and arrest. In *Johnson v. State*, 803 S.W.2d 272 (Tex.Cr.App.1990), our Court of Criminal Appeals had this to say on what would be sufficient probable cause in a search warrant affidavit:

> [T]he task of the issuing magistrate is to make a practical common sense decision whether given all of the circumstances set forth in the affidavit before him there is a fair probability the contraband or the evidence of a crime will be found in a particular place. The affidavit must be more than a 'mere conclusory statement that gives a magistrate virtually no basis at all for making a judgment regarding probable cause.' The magistrate must be presented with 'sufficient information' to allow that individual to determine probable cause; 'His actions cannot be a mere ratification of the bare conclusions of others.' *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct.

2317, 2332–33, 76 L.Ed.2d 527 (1983). The magistrate should not be bound by the standard such as proof beyond a reasonable doubt or by a preponderance of the evidence. The magistrate sole concern should be probability. *Gates, supra; Bower v. State,* 769 S.W.2d 887 (Tex.Cr.App. 1989).

*Johnson,* 803 S.W.2d at 288. We have examined the record in light of what is contained in the affidavit and we find that is sufficient.

■ Turning now to the sufficiency of the description of the place to be searched, we hold that the description of the location must reasonably apprise the police of where they are to conduct the search, *Morales v. State,* 640 S.W.2d 273 (Tex.Cr.App.1982); *Palmer v. State,* 614 S.W.2d 831 (Tex.Cr. App.1981), and to distinguish the place from other places in the community *Etchieson v. State,* 574 S.W.2d 753 (Tex.Cr.App.1978), *cert. denied,* 440 U.S. 936, 99 S.Ct. 1282, 59 L.Ed.2d 495 (1979). In examining the affidavit for the search warrant, one can readily see that detailed instructions are written as to how to get to the subject mobile home and premises. There was also a copy of a portion of San Augustine county road map attached to the affidavit and a red "X" marking the location of the premises to be searched. We have read the record and cannot find where it is demonstrated, nor is it shown by Appellant, that the officer lied in the affidavit for the search warrant nor is there anywhere showing that he recklessly disregarded the truth. The totality of the circumstances is the test for determining probable cause and affidavits for search warrants. *Johnson v. State,* 803 S.W.2d at 272; *Bower v. State,* 769 S.W.2d 887 (Tex.Cr.App.1989), *cert. denied,* — U.S. ——, 113 S.Ct. 107, 121 L.Ed.2d 66 (1992); *Eisenhauer v. State,* 754 S.W.2d 159 (Tex.Cr.App.1988). Under the foregoing standard, this affidavit is sufficient. Point of error number four is overruled.

In point of error number five, Appellant alleges the court committed error for allowing into evidence, over defendant's timely objection, a facsimile from the telephone company showing that a telephone number was registered to Betty Kean in San Augustine, without laying the proper predicate for such admission and without the testimony of anyone from the telephone company to show a business records exception.

■ During testimony of DPS Officer Don Sparks, the State elicited testimony from Officer Sparks that when he was present at the arrest of Catherine Dyke at the motel in Lufkin, that he observed by looking at hotel records, a phone number representing a long-distance call from room 141, the room that Catherine Dyke was using. To show who the subscriber was or to whom the number belongs, the prosecutor offered a facsimile from the telephone company that was received in response to an inquiry asking to whom the number was registered. Testimony was given reflecting that a subpoena had been faxed to Southwestern Bell Telephone Company asking for subscriber information on that phone number for the month of October, 1989. The facsimile from the phone company showed the telephone number was issued to Betty Kean and her mailing address. It was not certified or exemplified. As we understand it, the issue before us is whether or not there is sufficient authentication or identification of this facsimile of the records of the telephone company as governed by TEXAS RULE OF CRIMINAL EVIDENCE 901, which requires:

> **General Provision:** The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a ***finding that the matter in question is what its proponent claims.***

TEX.R.CRIM.EVID. 901(a) (emphasis added). What the proponent (State) here was claiming, is that a certain telephone number was listed to a certain person (Kean). Rule 901(b)(4) sets forth examples as to how the requirement of authentication can be met:

> (4) *Distinctive Characteristics and the Like.* Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

TEX.R.CRIM.EVID. 901(b)(4). The first page of the facsimile transmittal sheet with the heading from Southwestern Bell Telephone Company, and below that, the statement:

"This is: Southwestern Bell Telephone Company Risk Management—SECURITY LOCATED AT 208 SOUTH ACKARD, ROOM 655, DALLAS, TEXAS, 75202." We find that the court impliedly found that by examining the copy of the subpoena, the faxed documents themselves, and the circumstances surrounding its acquisition by Officer Sparks, the State had satisfied the authenticity requirement of TEXAS RULE OF CRIMINAL EVIDENCE 901. We find merit in the State's argument that this is only the reverse of what is found in a telephone book. We further find that a fax transmission is a "telephone conversation" as set forth as an example of a manner of authenticating a probative fact. With this substitution in mind, we read TEXAS RULE OF CRIMINAL EVIDENCE 901(b)(6), which states in pertinent part the following:

> (6) *Telephone Conversations.* Telephone conversations, by evidence that a call was made to the number assigned at the time by the telephone company to a particular person or business, or . . .
>
> . . . the call was made to a place of business and the conversation related to business reasonably transacted over the telephone.

Here, the officer, by fax to the telephone company at their fax number, inquired about a matter that could reasonably be transacted over the telephone or by fax. It is questionable as to whether Appellant was harmed due to the fact Catherine Dyke had earlier testified that she had telephoned San Augustine and talked to Ray (Kenneth Ray Tyson) in regard to meeting at Arby's at which Betty Kean and Appellant showed up, supposedly unexpected, in the white Oldsmobile. There was also testimony this call was made the same day she left the motel room to go to Arby's in Nacogdoches. Since the officer did not see her leave the motel room before the trip to Arby's that day, the implication is that the call was made from the motel and this number which the officer testified was made from that room was already in evidence without objection. We find the court did not abuse its discretion in allowing the facsimile into evidence. Point of error number five is overruled.

In point of error number six, Appellant complains of the court giving the parole law instruction which the Court of Criminal Appeals ruled unconstitutional in *Rose v. State,* 752 S.W.2d 529 (Tex.Cr.App.1987). As a result of *Rose,* the constitution was amended on November 7, 1989 to authorize the parole charge complained of. All of the cases cited by Appellant were prior to this amendment and are not dispositive. The parole law instruction is a constitutional instruction. TEX. CODE CRIM.PROC.ANN. art. 37.07, § 4; *Oakley v. State,* 807 S.W.2d 378 (Tex.App.—Houston [14th Dist.], 1991), *affirmed,* 830 S.W.2d 107 (Tex.Cr.App.1992). Therefore, point of error number six is overruled.

The judgment of the trial court is **affirmed.**