# NO. 12-07-00259-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ELWAYNE JOHNSON,* *APPELLANT* | § | *APPEAL FROM THE 217TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

A jury found Appellant Elwayne Johnson guilty of armed robbery. Appellant elected to have the trial court assess punishment. The trial court found two enhancement paragraphs true and sentenced Appellant to imprisonment for twenty-five years. Appellant presents five issues on appeal. We affirm.

### BACKGROUND

Derek Bobbitt, an employee of Frito-Lay, saw Appellant come in Brookshire Brothers grocery store in Lufkin and pick up a bag of cat food. Bobbitt watched Appellant walk to the meat market, pick up summer sausage, and put it in his pants. Appellant then went to the store office where he asked for a refund on the cat food he had just taken from the shelf. He received a "refund" on the cat food he had never purchased. Bobbitt reported Appellant's conduct to the store manager, Mitch Carroll. When Appellant left the store without paying for the sausage, Carroll, accompanied by Bobbitt and Cesar Tovar, a Brookshire Brothers employee, approached Appellant, and Carroll asked him if he had anything belonging to the store. Appellant initially denied having anything, but after being asked again, he produced the sausage and handed it to Carroll. Carroll then asked Appellant if he had anything else, and he replied, "I got a .38." Carroll told Bobbitt and Tovar to get

back in the store, and told a lady in the office to call the police and tell them that Appellant said he had a gun. A plain clothes detective detained Appellant by drawing his firearm, and he and Officer Randall Brooks searched Appellant. They found a crack pipe, a Brookshire Brothers receipt, and a little over four dollars, but no weapon. The officers returned the money to Brookshire Brothers. None of the witnesses ever saw Appellant with a firearm.

Appellant did not testify, nor did he call any witnesses.

### TRIAL COURT'S REFUSAL TO GRANT CHALLENGE FOR CAUSE

In his first issue, Appellant contends the trial court abused its discretion in denying his challenge for cause of James Alan Lindstrom, forcing him to exhaust his peremptory challenges and accept an objectionable juror.

During the voir dire examination, Lindstrom stated that his brother was a market manager for Brookshire Brothers. When asked if the fact that his brother worked at Brookshire Brothers might lead him to show favoritism to the State or Brookshire Brothers employees that may testify, he replied "He's my brother. Yeah. I'd be inclined to be favored toward him. If it was an armed robbery situation, of course." Asked if he would "give a little more credibility to those witnesses since they are co-employees with your brother, he said, "I might. I don't – you know." Finally, defense counsel asked Lindstrom if the witnesses came in wearing Brookshire Brothers uniforms and worked in the same store as his brother, "might you give a little more credibility or lean that way." Lindstrom answered, "No, I don't think I would. I'd try not to." Lindstrom did not indicate that he knew Carroll or Tovar. Lindstrom's brother was not a witness nor did he have any other involvement in the case.

### Standard of Review

The trial court's denial of Appellant's challenge of a prospective juror for cause is reviewed for abuse of discretion considering all the venireperson's responses on voir dire. ***Swearingen v. State***, 101 S.W.3d 89, 98-99 (Tex. Crim. App. 2003). When the record does not contain a clearly objectionable declaration by the venireperson, or the record demonstrates equivocal responses by the venireperson, the reviewing court should accord great deference to the decision of the trial judge, who is in the best position to evaluate the venireperson's demeanor and responses. ***Id.*** at 99; *see also* ***Blue v. State***, 125 S.W.3d 491, 497 (Tex. Crim. App. 2003).

2

**Applicable Law**

A prospective juror who has a bias or prejudice in favor of or against the defendant may be challenged for cause by either the State or the defense. TEX. CODE CRIM. PROC. ANN. art. 35.16(a)(9) (Vernon 2006). "Bias" is "an inclination toward one side of an issue rather than to the other . . . [which] leads to the natural inference that [a juror] will not or did not act with impartiality. . . ." **Anderson v. State**, 633 S.W.2d 851, 853 (Tex. Crim. App. 1982) (quoting **Compton v. Henrie**, 364 S.W.2d 179 (Tex. 1963)). "Prejudice" means "prejudgment." **Id.** Friendships and work associations can lead to a bias for or against the defendant. *See* **Willis v. State**, 936 S.W.2d 302, 309-12 (Tex. App.–Tyler 1996, pet. ref'd). However, Appellant must show the panelist was biased to an extent that he or she was incapable of being fair. 43 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 35.71 (2d ed. 2001). The fact that the panelist is a work associate of persons expected to testify for the State does not compel excusal. **Arnold v. State**, 778 S.W.3d 172, 182 (Tex. App.–Austin 1989), *aff'd*, 853 S.W.2d 543 (Tex. Crim. App. 1993). If a panelist acknowledges that he or she would tend to believe one category of witness more than another, but also asserts that he or she will judge the credibility of each witness individually, there is no ground for reversal for denial of challenge for cause. *See* **Smith v. State**, 907 S.W.2d 522, 530-31 (Tex. Crim. App. 1995) (venireperson who might tend to believe people in certain professions over others not subject to challenge after agreeing to listen to both sides and make decision based on facts and circumstances presented).

**Discussion**

Lindstrom, when first asked if his brother's employment with Brookshire Brothers would incline him to favor the State if Brookshire Brothers employees testified for the prosecution, responded, "Yeah, he's my brother. I'd be inclined to be favored toward him. If it was an armed robbery situation, of course." But in answer to defense counsel's final question inquiring if he might give the State's witnesses "a little more credibility or lean that way," Lindstrom answered, "No, I don't think I would. I'd try not to." Taken together, Lindstrom's answers indicate some ambivalence, but his last response indicates that he would not favor the State. When the venireperson's responses demonstrate vacillation or ambivalence, the trial court is in the best position to observe the prospective juror's demeanor and tone of voice. Therefore, the trial court's

3

evaluation of the venireperson's suitability is entitled to great deference. *See Blue*, 125 S.W.3d at 497. The trial court did not abuse its discretion in overruling Appellant's challenge of prospective juror Lindstrom for cause. Appellant's first issue is overruled.

### TAKING APPELLANT'S FINGERPRINTS IN COURT

In his second issue, Appellant complains that the trial court erred in allowing the State, over his objection, to take his fingerprints in open court during the punishment phase in order to establish the admissibility of pen packets showing two prior convictions alleged in the indictment.

Carole Cloyd, a fingerprint examiner for the Lufkin Police Department, testified that the same person's fingerprints were on the pen packets the State sought to introduce, but she had not compared the prints on the documents with fingerprint cards containing Appellant's prints taken the day before and admitted in evidence. The State then requested and received the trial court's permission for Cloyd to take Appellant's prints in the courtroom and compare them to the fingerprints on the pen packets. After taking Appellant's fingerprints, Cloyd testified the prints she had just taken matched the fingerprints in the pen packets. Appellant objected at trial and contends on appeal that fingerprinting him in court violated his right against self-incrimination as well as his right to due process.

**Applicable Law**

To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). The State may prove both of these elements in several ways, including (1) the defendant's admission or stipulation, (2) testimony by a person who was present when the person was convicted of the specified crime and can identify the defendant as that person, or (3) documentary proof (such as a judgment) that contains sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted. *Id.* at 921-22.

The taking of fingerprints for identification purposes is not a violation of the accused's rights under the Fifth Amendment. *Schmerber v. California*, 384 U.S. 757, 764, 86 S. Ct. 1826, 1832, 16 L. Ed. 2d (1966); *Tea v. State*, 453 S.W.2d 179, 181 (Tex. Crim. App. 1970). "[T]he most common method of proving identity is by fingerprint comparison. This method usually entails taking the

4

fingerprints of the defendant during the trial." DIX & DAWSON, § 38.148. Appellant has provided no authority, nor have we located any, to support his contention that taking his fingerprints in court after the commencement of the penalty phase deprived him of due process. Moreover, the pen packets also contained photographs of Appellant to which the trial judge could have referred to establish that Appellant was the same person named in the pen packets. *Tyson v. State*, 873 S.W.2d 53, 59 (Tex. App.–Tyler 1993, pet. ref'd).

The trial court did not err. Appellant's second issue is overruled.

### ELECTION BETWEEN DIFFERENT MANNERS AND MEANS OF COMMITTING THE OFFENSE

In its indictment, the State charged that Appellant did "while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or knowingly threaten or place [the victim] in fear of imminent bodily injury or death." Appellant complains that the State, in its indictment, charged two different manners or means of committing the same offense, (1) threatening the victim or (2) placing the victim in fear of imminent bodily injury or death. Appellant requested the trial court to require the State to elect by which manner or means the robbery had been committed. The trial court denied Appellant's motion. Appellant argues that the court's charge should have been framed so as to require jury unanimity on the manner or means of the commission of the offense.

**Applicable Law**

"When the State charges different criminal acts, regardless of whether those acts constitute violations of the same or different statutory provisions, the jury must be instructed that it cannot return a guilty verdict unless it unanimously agrees upon the commission of any one of these criminal acts." *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). "The phrase 'manner or means' describes *how* the defendant committed the specific statutory criminal act. It does not mean that the State can rely upon a laundry list of different criminal acts and let the individual jurors take their pick on which each believes the defendant committed." *Id.* at 745.

Texas courts have long held that the State may plead alternate manner and means of the commission of the same offense. *Willis v. State*, 34 Tex. Crim. 148, 149, 29 S.W. 787, 788 (1895). An indictment may contain as many paragraphs as are necessary to allege the various manners and

5

means of committing one alleged offense. ***Callins v. State***, 780 S.W.2d 176, 182-83 (Tex. Crim. App. 1986). The State need not elect between various theories alleged in charging a single criminal act or event, and the jury may consider all theories and return a general verdict of guilty. *See* ***Franklin v. State***, 606 S.W.2d 818, 821 (Tex. Crim. App. 1978); ***Rodriguez v. State***, 970 S.W.2d 66, 69 (Tex. App.–Houston [14th Dist.] 1998, pet. ref'd). The indictment, however, may not allege different statutory offenses or different events to charge one offense. *See **id**.*

## Discussion

The indictment in this case alleged only one criminal event or offense, and an alternative manner and means of committing that offense. Therefore, no election was required.

In his brief, Appellant argues that the court erred in not charging the jury that they "must unanimously agree that Appellant did at least one of two different acts: either he knowingly threatened or placed [the victim] in fear of bodily injury or death." Jury unanimity is required on the essential elements of the offense. However, if the statute in question establishes different manner or means by which the offense may be committed, unanimity is generally not required on the alternate modes or means of the offenses commission. ***Jefferson v. State***, 189 S.W.3d 305, 312 (Tex. Crim. App. 2006). The trial court did not err in refusing to charge the jury as Appellant requested.

Appellant's reliance on the decision of the court of criminal appeals in ***Ngo*** is misplaced. In ***Ngo***, the State sought one conviction for credit card abuse while alleging three statutorily different criminal acts. ***Ngo***, 175 S.W.3d at 741. "It sought one conviction for the commission of one credit card abuse offense by proving any of three different criminal acts, occurring at three different times, and in three different ways." ***Id.*** at 744. The indictment in the case at bar alleged alternate means of committing one offense occurring in one criminal event. Appellant's third issue is overruled.

### LEGAL AND FACTUAL SUFFICIENCY

In his fourth and fifth issues, Appellant maintains the evidence is legally and factually insufficient to support his conviction.

When Appellant exited the store, Mitch Carroll confronted him. Appellant returned the sausage. When Carroll asked him if he had anything else (presumably the four dollars for the cat

6

food return), Johnson replied that he had a .38. Although the witnesses were within four feet of Appellant, none of them saw a gun. Appellant made no gesture indicating he had a pistol. He did nothing aggressive or threatening. When the police arrived at the Brookshire Brothers parking lot, they searched Appellant thoroughly but found no weapon. Appellant argues that since he did not display a weapon, act as if he had a weapon, or dress in a manner that might conceal a weapon, the fear experienced by the three witnesses was not a reasonable fear of bodily injury or death but irrational and unjustified.

## Standard of Review

The standard for reviewing a legal sufficiency challenge is whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 317-18, 99 S. Ct. 2781, 2788-89, 61 L. Ed. 2d 560 (1979); *see also Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003). In reviewing factual sufficiency, we must ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine our confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); *see also Watson v. State*, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).

## Applicable Law

The indictment alleges that Appellant, while in the course of committing theft and with intent to obtain or maintain control of the property, did intentionally or knowingly threaten or place the victims in fear of imminent bodily injury or death. *See* TEX. PENAL CODE ANN. § 29.02(a)(2) (Vernon 2003). In order to prove the offense of robbery as charged herein, there must have been threatened violence to the victim, or intimidation of such a nature that the threatened party was put in fear. *See Green v. State*, 567 S.W.2d 211, 213 (Tex. Crim. App. 1978). The victim's fear may not arise merely from some temperamental timidity, but must result from some conduct of the perpetrator. *Devine v. State*, 786 S.W.2d 268, 271 (Tex. Crim. App. 1989). The fear must be of such a nature as in reason and common experience is likely to induce a person to part with his property against his will. *Id.* at 270. The threat or conduct placing another in fear must be of imminent bodily injury, that is "ready to take place, near at hand, . . . menacingly near." *Id.*

(citations omitted).

In *Robinson v. State*, 817 S.W.2d 822 (Tex. App.–Fort Worth 1991, pet. ref'd), the defendant reached into the cash drawer and started grabbing money. When the store clerk slammed the drawer on the defendant's hand, he reached for an object under his shirt and told the clerk, "I've got a gun." Although the defendant never displayed a weapon, the court held the evidence sufficient to show that the defendant had placed the store clerk in fear of imminent bodily injury or death. *Id.* at 824.

In *Wilmeth v. State*, 808 S.W.2d 703 (Tex. App.–Tyler 1991, no pet.), the "husky–built" defendant placed a piece of bubble gum and a dime on the convenience store counter. When Mrs. Driver, the clerk, opened the register to ring up the sale, the defendant placed his hands inside the register drawer. Mrs. Driver grabbed the man's wrists and said "What are you doing?" The defendant did not answer, but clenched his fists and looked "hard" at her. Mrs. Driver released her grip on the defendant's wrists and the defendant sprinted out the door with forty dollars of the store's money. *Id.* at 704. This court held that, given the surrounding circumstances, the defendant's menacing look and clenched fists were sufficient to engender a reasonable fear of imminent bodily injury or death. *Id.* at 706.

In *Williams v. State*, 827 S.W.2d 614 (Tex. App.–Houston [1st Dist.] 1992, pet. ref'd), the apparently intoxicated defendant approached the convenience store manager as he counted the money in his cash register, leaned toward the register with his face very close to the manager's, and said, "We are going to do it like this; give me all the money, put the money in the towel, and I'm serious." The manager asked the defendant if he was sure about what he was saying, and the defendant repeated, "[P]ut the money in the towel, . . . and I'm serious." The manager reached behind him attempting to get a metal pipe. He again asked the defendant, "Are you sure of what you are saying?" The defendant then "giggled real funny and grab the bill (less than twenty dollars) and run out the place . . . and he went down the street just giggling and hollering." The manager testified that he was afraid of the defendant because he felt that the defendant would cause him bodily injury. Although the defendant did not display a weapon or make an express threat, the court held that the jury, as factfinder, was free to believe the manager's testimony that he was afraid of the defendant and that the manager reached for the pipe because the defendant's words and actions placed the manager in fear of being imminently harmed. *Id.* at 617.

## Discussion

Carroll, Bobbitt, and Tovar all testified that when Appellant told Carroll that he had a .38, they knew he meant a pistol and they feared for their lives. Carroll immediately ordered Bobbitt and Tovar back into the store and went himself and told Karissa Hodges to call the police again and tell them "he says he has a gun." Ms. Hodges described Carroll's emotional state as "frantic." Carroll testified, "I was afraid I was going to get shot." Bobbitt told the jury, "I've got two kids. I wasn't going to stick around. . . ." Tovar testified, "If he gots a gun and I ain't got nothing, I'm going to be scared."

It is not necessary that the evidence show that Appellant displayed a weapon or made an express threat. Appellant's announcement that he had a .38 was conduct sufficient to place the store employees in fear of imminent bodily injury or death. An escaping thief's announcement that he has a pistol is enough to inspire fear in the boldest citizen. The fear experienced by Carroll, Bobbitt, and Tovar was, the evidence shows, "of such a nature as in reason and common experience would induce a person to part with property against his will." *See Devine*, 786 S.W.2d at 271.

The evidence is both legally and factually sufficient to sustain Appellant's conviction. Appellant's fourth and fifth issues are overruled.

### DISPOSITION

The judgment of the trial court is ***affirmed***.

   BILL BASS   
Justice

Opinion delivered May 30, 2008.
*Panel consisted of Griffith, J., Hoyle, J., and Bass, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by assignment.*

(DO NOT PUBLISH)