NO. 12-07-00259-CR



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS




ELWAYNE JOHNSON,
§
 APPEAL FROM THE 217TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 ANGELINA COUNTY, TEXAS






MEMORANDUM OPINION


 A jury found Appellant Elwayne Johnson guilty of armed robbery. Appellant elected to have
the trial court assess punishment. The trial court found two enhancement paragraphs true and
sentenced Appellant to imprisonment for twenty-five years. Appellant presents five issues on appeal. 
We affirm.


Background


 Derek Bobbitt, an employee of Frito-Lay, saw Appellant come in Brookshire Brothers
grocery store in Lufkin and pick up a bag of cat food. Bobbitt watched Appellant walk to the meat
market, pick up summer sausage, and put it in his pants. Appellant then went to the store office
where he asked for a refund on the cat food he had just taken from the shelf. He received a "refund"
on the cat food he had never purchased. Bobbitt reported Appellant's conduct to the store manager,
Mitch Carroll. When Appellant left the store without paying for the sausage, Carroll, accompanied
by Bobbitt and Cesar Tovar, a Brookshire Brothers employee, approached Appellant, and Carroll
asked him if he had anything belonging to the store. Appellant initially denied having anything, but
after being asked again, he produced the sausage and handed it to Carroll. Carroll then asked
Appellant if he had anything else, and he replied, "I got a .38." Carroll told Bobbitt and Tovar to get
back in the store, and told a lady in the office to call the police and tell them that Appellant said he
had a gun. A plain clothes detective detained Appellant by drawing his firearm, and he and Officer
Randall Brooks searched Appellant. They found a crack pipe, a Brookshire Brothers receipt, and
a little over four dollars, but no weapon. The officers returned the money to Brookshire Brothers. 
None of the witnesses ever saw Appellant with a firearm.

 Appellant did not testify, nor did he call any witnesses. 


Trial Court's Refusal to Grant Challenge for Cause


 In his first issue, Appellant contends the trial court abused its discretion in denying his
challenge for cause of James Alan Lindstrom, forcing him to exhaust his peremptory challenges and
accept an objectionable juror.

 During the voir dire examination, Lindstrom stated that his brother was a market manager
for Brookshire Brothers. When asked if the fact that his brother worked at Brookshire Brothers
might lead him to show favoritism to the State or Brookshire Brothers employees that may testify,
he replied "He's my brother. Yeah. I'd be inclined to be favored toward him. If it was an armed
robbery situation, of course." Asked if he would "give a little more credibility to those witnesses
since they are co-employees with your brother, he said, "I might. I don't - you know." Finally,
defense counsel asked Lindstrom if the witnesses came in wearing Brookshire Brothers uniforms and
worked in the same store as his brother, "might you give a little more credibility or lean that way." 
Lindstrom answered, "No, I don't think I would. I'd try not to." Lindstrom did not indicate that he
knew Carroll or Tovar. Lindstrom's brother was not a witness nor did he have any other
involvement in the case. 

Standard of Review

 The trial court's denial of Appellant's challenge of a prospective juror for cause is reviewed
for abuse of discretion considering all the venireperson's responses on voir dire. Swearingen v.
State, 101 S.W.3d 89, 98-99 (Tex. Crim. App. 2003). When the record does not contain a clearly
objectionable declaration by the venireperson, or the record demonstrates equivocal responses by the
venireperson, the reviewing court should accord great deference to the decision of the trial judge,
who is in the best position to evaluate the venireperson's demeanor and responses. Id. at 99; see also
Blue v. State, 125 S.W.3d 491, 497 (Tex. Crim. App. 2003). 


Applicable Law

 A prospective juror who has a bias or prejudice in favor of or against the defendant may be
challenged for cause by either the State or the defense. Tex. Code Crim. Proc. Ann. art.
35.16(a)(9) (Vernon 2006). "Bias" is "an inclination toward one side of an issue rather than to the
other . . . [which] leads to the natural inference that [a juror] will not or did not act with impartiality.
. . ." Anderson v. State, 633 S.W.2d 851, 853 (Tex. Crim. App. 1982) (quoting Compton v. Henrie,
364 S.W.2d 179 (Tex. 1963)). "Prejudice" means "prejudgment." Id. Friendships and work
associations can lead to a bias for or against the defendant. See Willis v. State, 936 S.W.2d 302,
309-12 (Tex. App.-Tyler 1996, pet. ref'd). However, Appellant must show the panelist was biased
to an extent that he or she was incapable of being fair. 43 George E. Dix & Robert O. Dawson,
Texas Practice: Criminal Practice and Procedure § 35.71 (2d ed. 2001). The fact that the
panelist is a work associate of persons expected to testify for the State does not compel excusal. 
Arnold v. State, 778 S.W.3d 172, 182 (Tex. App.-Austin 1989), aff'd, 853 S.W.2d 543 (Tex. Crim.
App. 1993). If a panelist acknowledges that he or she would tend to believe one category of witness
more than another, but also asserts that he or she will judge the credibility of each witness
individually, there is no ground for reversal for denial of challenge for cause. See Smith v. State,
907 S.W.2d 522, 530-31 (Tex. Crim. App. 1995) (venireperson who might tend to believe people
in certain professions over others not subject to challenge after agreeing to listen to both sides and
make decision based on facts and circumstances presented).

Discussion

 Lindstrom, when first asked if his brother's employment with Brookshire Brothers would
incline him to favor the State if Brookshire Brothers employees testified for the prosecution,
responded, "Yeah, he's my brother. I'd be inclined to be favored toward him. If it was an armed
robbery situation, of course." But in answer to defense counsel's final question inquiring if he might
give the State's witnesses "a little more credibility or lean that way," Lindstrom answered, "No, I
don't think I would. I'd try not to." Taken together, Lindstrom's answers indicate some
ambivalence, but his last response indicates that he would not favor the State. When the
venireperson's responses demonstrate vacillation or ambivalence, the trial court is in the best
position to observe the prospective juror's demeanor and tone of voice. Therefore, the trial court's
evaluation of the venireperson's suitability is entitled to great deference. See Blue, 125 S.W.3d at
497. The trial court did not abuse its discretion in overruling Appellant's challenge of prospective
juror Lindstrom for cause. Appellant's first issue is overruled. 


Taking Appellant's Fingerprints in Court


 In his second issue, Appellant complains that the trial court erred in allowing the State, over
his objection, to take his fingerprints in open court during the punishment phase in order to establish
the admissibility of pen packets showing two prior convictions alleged in the indictment.

 Carole Cloyd, a fingerprint examiner for the Lufkin Police Department, testified that the
same person's fingerprints were on the pen packets the State sought to introduce, but she had not
compared the prints on the documents with fingerprint cards containing Appellant's prints taken the
day before and admitted in evidence. The State then requested and received the trial court's
permission for Cloyd to take Appellant's prints in the courtroom and compare them to the
fingerprints on the pen packets. After taking Appellant's fingerprints, Cloyd testified the prints she
had just taken matched the fingerprints in the pen packets. Appellant objected at trial and contends
on appeal that fingerprinting him in court violated his right against self-incrimination as well as his
right to due process.

Applicable Law

 To establish that a defendant has been convicted of a prior offense, the State must prove
beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that
conviction. Flowers v. State, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). The State may prove
both of these elements in several ways, including (1) the defendant's admission or stipulation, (2)
testimony by a person who was present when the person was convicted of the specified crime and
can identify the defendant as that person, or (3) documentary proof (such as a judgment) that
contains sufficient information to establish both the existence of a prior conviction and the
defendant's identity as the person convicted. Id. at 921-22.

 The taking of fingerprints for identification purposes is not a violation of the accused's rights
under the Fifth Amendment. Schmerber v. California, 384 U.S. 757, 764, 86 S. Ct. 1826, 1832, 16
L. Ed. 2d (1966); Tea v. State, 453 S.W.2d 179, 181 (Tex. Crim. App. 1970). "[T]he most common
method of proving identity is by fingerprint comparison. This method usually entails taking the
fingerprints of the defendant during the trial." Dix & Dawson, § 38.148. Appellant has provided
no authority, nor have we located any, to support his contention that taking his fingerprints in court
after the commencement of the penalty phase deprived him of due process. Moreover, the pen
packets also contained photographs of Appellant to which the trial judge could have referred to
establish that Appellant was the same person named in the pen packets. Tyson v. State, 873 S.W.2d
53, 59 (Tex. App.-Tyler 1993, pet. ref'd). 

 The trial court did not err. Appellant's second issue is overruled.


Election Between Different Manners and Means of Committing the Offense


 In its indictment, the State charged that Appellant did "while in the course of committing
theft of property and with intent to obtain or maintain control of said property, intentionally or
knowingly threaten or place [the victim] in fear of imminent bodily injury or death." Appellant
complains that the State, in its indictment, charged two different manners or means of committing
the same offense, (1) threatening the victim or (2) placing the victim in fear of imminent bodily
injury or death. Appellant requested the trial court to require the State to elect by which manner or
means the robbery had been committed. The trial court denied Appellant's motion. Appellant
argues that the court's charge should have been framed so as to require jury unanimity on the manner
or means of the commission of the offense.

Applicable Law

 "When the State charges different criminal acts, regardless of whether those acts constitute
violations of the same or different statutory provisions, the jury must be instructed that it cannot
return a guilty verdict unless it unanimously agrees upon the commission of any one of these
criminal acts." Ngo v. State, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). "The phrase 'manner
or means' describes how the defendant committed the specific statutory criminal act. It does not
mean that the State can rely upon a laundry list of different criminal acts and let the individual jurors
take their pick on which each believes the defendant committed." Id. at 745. 

 Texas courts have long held that the State may plead alternate manner and means of the
commission of the same offense. Willis v. State, 34 Tex. Crim. 148, 149, 29 S.W. 787, 788 (1895). 
An indictment may contain as many paragraphs as are necessary to allege the various manners and
means of committing one alleged offense. Callins v. State, 780 S.W.2d 176, 182-83 (Tex. Crim.
App. 1986). The State need not elect between various theories alleged in charging a single criminal
act or event, and the jury may consider all theories and return a general verdict of guilty. See
Franklin v. State, 606 S.W.2d 818, 821 (Tex. Crim. App. 1978); Rodriguez v. State, 970 S.W.2d
66, 69 (Tex. App.-Houston [14th Dist.] 1998, pet. ref'd). The indictment, however, may not allege
different statutory offenses or different events to charge one offense. See id.

Discussion

 The indictment in this case alleged only one criminal event or offense, and an alternative
manner and means of committing that offense. Therefore, no election was required.

 In his brief, Appellant argues that the court erred in not charging the jury that they "must
unanimously agree that Appellant did at least one of two different acts: either he knowingly
threatened or placed [the victim] in fear of bodily injury or death." Jury unanimity is required on the
essential elements of the offense. However, if the statute in question establishes different manner
or means by which the offense may be committed, unanimity is generally not required on the
alternate modes or means of the offenses commission. Jefferson v. State, 189 S.W.3d 305, 312
(Tex. Crim. App. 2006). The trial court did not err in refusing to charge the jury as Appellant
requested.

 Appellant's reliance on the decision of the court of criminal appeals in Ngo is misplaced. 
In Ngo, the State sought one conviction for credit card abuse while alleging three statutorily different
criminal acts. Ngo, 175 S.W.3d at 741. "It sought one conviction for the commission of one credit
card abuse offense by proving any of three different criminal acts, occurring at three different times,
and in three different ways." Id. at 744. The indictment in the case at bar alleged alternate means
of committing one offense occurring in one criminal event. Appellant's third issue is overruled.


Legal and Factual Sufficiency


 In his fourth and fifth issues, Appellant maintains the evidence is legally and factually
insufficient to support his conviction.

 When Appellant exited the store, Mitch Carroll confronted him. Appellant returned the
sausage. When Carroll asked him if he had anything else (presumably the four dollars for the cat
food return), Johnson replied that he had a .38. Although the witnesses were within four feet of
Appellant, none of them saw a gun. Appellant made no gesture indicating he had a pistol. He did
nothing aggressive or threatening. When the police arrived at the Brookshire Brothers parking lot,
they searched Appellant thoroughly but found no weapon. Appellant argues that since he did not
display a weapon, act as if he had a weapon, or dress in a manner that might conceal a weapon, the
fear experienced by the three witnesses was not a reasonable fear of bodily injury or death but
irrational and unjustified.

Standard of Review

 The standard for reviewing a legal sufficiency challenge is whether, viewing the evidence in
the light most favorable to the jury's verdict, any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 317-18, 99
S. Ct. 2781, 2788-89, 61 L. Ed. 2d 560 (1979); see also Sanders v. State, 119 S.W.3d 818, 820 (Tex.
Crim. App. 2003). In reviewing factual sufficiency, we must ask whether a neutral review of all the
evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak
as to undermine our confidence in the jury's determination, or the proof of guilt, although adequate
if taken alone, is greatly outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex.
Crim. App. 2000); see also Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).

Applicable Law

 The indictment alleges that Appellant, while in the course of committing theft and with intent
to obtain or maintain control of the property, did intentionally or knowingly threaten or place the
victims in fear of imminent bodily injury or death. See Tex. Penal Code Ann. § 29.02(a)(2)
(Vernon 2003). In order to prove the offense of robbery as charged herein, there must have been
threatened violence to the victim, or intimidation of such a nature that the threatened party was put
in fear. See Green v. State, 567 S.W.2d 211, 213 (Tex. Crim. App. 1978). The victim's fear may
not arise merely from some temperamental timidity, but must result from some conduct of the
perpetrator. Devine v. State, 786 S.W.2d 268, 271 (Tex. Crim. App. 1989). The fear must be of
such a nature as in reason and common experience is likely to induce a person to part with his
property against his will. Id. at 270. The threat or conduct placing another in fear must be of
imminent bodily injury, that is "ready to take place, near at hand, . . . menacingly near." Id.
(citations omitted).

 In Robinson v. State, 817 S.W.2d 822 (Tex. App.-Fort Worth 1991, pet. ref'd), the defendant
reached into the cash drawer and started grabbing money. When the store clerk slammed the drawer
on the defendant's hand, he reached for an object under his shirt and told the clerk, "I've got a gun." 
Although the defendant never displayed a weapon, the court held the evidence sufficient to show that
the defendant had placed the store clerk in fear of imminent bodily injury or death. Id. at 824.

 In Wilmeth v. State, 808 S.W.2d 703 (Tex. App.-Tyler 1991, no pet.), the "husky-built"
defendant placed a piece of bubble gum and a dime on the convenience store counter. When Mrs.
Driver, the clerk, opened the register to ring up the sale, the defendant placed his hands inside the
register drawer. Mrs. Driver grabbed the man's wrists and said "What are you doing?" The
defendant did not answer, but clenched his fists and looked "hard" at her. Mrs. Driver released her
grip on the defendant's wrists and the defendant sprinted out the door with forty dollars of the store's
money. Id. at 704. This court held that, given the surrounding circumstances, the defendant's
menacing look and clenched fists were sufficient to engender a reasonable fear of imminent bodily
injury or death. Id. at 706.

 In Williams v. State, 827 S.W.2d 614 (Tex. App.-Houston [1st Dist.] 1992, pet. ref'd), the
apparently intoxicated defendant approached the convenience store manager as he counted the
money in his cash register, leaned toward the register with his face very close to the manager's, and
said, "We are going to do it like this; give me all the money, put the money in the towel, and I'm
serious." The manager asked the defendant if he was sure about what he was saying, and the
defendant repeated, "[P]ut the money in the towel, . . . and I'm serious." The manager reached
behind him attempting to get a metal pipe. He again asked the defendant, "Are you sure of what you
are saying?" The defendant then "giggled real funny and grab the bill (less than twenty dollars) and
run out the place . . . and he went down the street just giggling and hollering." The manager testified
that he was afraid of the defendant because he felt that the defendant would cause him bodily injury. 
Although the defendant did not display a weapon or make an express threat, the court held that the
jury, as factfinder, was free to believe the manager's testimony that he was afraid of the defendant
and that the manager reached for the pipe because the defendant's words and actions placed the
manager in fear of being imminently harmed. Id. at 617.


Discussion

 Carroll, Bobbitt, and Tovar all testified that when Appellant told Carroll that he had a .38,
they knew he meant a pistol and they feared for their lives. Carroll immediately ordered Bobbitt and
Tovar back into the store and went himself and told Karissa Hodges to call the police again and tell
them "he says he has a gun." Ms. Hodges described Carroll's emotional state as "frantic." Carroll
testified, "I was afraid I was going to get shot." Bobbitt told the jury, "I've got two kids. I wasn't
going to stick around. . . ." Tovar testified, "If he gots a gun and I ain't got nothing, I'm going to be
scared."

 It is not necessary that the evidence show that Appellant displayed a weapon or made an
express threat. Appellant's announcement that he had a .38 was conduct sufficient to place the store
employees in fear of imminent bodily injury or death. An escaping thief's announcement that he has
a pistol is enough to inspire fear in the boldest citizen. The fear experienced by Carroll, Bobbitt, and
Tovar was, the evidence shows, "of such a nature as in reason and common experience would induce
a person to part with property against his will." See Devine, 786 S.W.2d at 271.

 The evidence is both legally and factually sufficient to sustain Appellant's conviction. 
Appellant's fourth and fifth issues are overruled.


Disposition


 The judgment of the trial court is affirmed.



 BILL BASS 

 Justice



Opinion delivered May 30, 2008.

Panel consisted of Griffith, J., Hoyle, J., and Bass, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by assignment.




(DO NOT PUBLISH)