**Louis C. HENRIE, Appellant,**

v.

**William O. COMPTON et al., Appellees.**

No. 16317.

Court of Civil Appeals of Texas.

Fort Worth.

April 27, 1962.

Rehearing Denied June 1, 1962.

Harris, Anderson, Henley & Rhodes, Dallas, Stone, Parker, Snakard, Friedman

& Brown, John G. Street, Jr., and James A. McMullen III, Fort Worth, for appellant.

Rawlings, Sayers, Scurlock & Eidson, Brown & Murray, and M. Hendricks Brown, Fort Worth, for appellees.

BOYD, Justice.

Louis C. Henrie sued William O. Compton, Mrs. William O. Compton, Tommie G. Mercer, and Mrs. G. E. Mercer, individually and doing business as Tarrant Distributing Company, for damages for personal injuries and property loss resulting from a collision between a truck owned and operated by the plaintiff and a truck belonging to the defendants and being operated by their employee, Edward Castillo. Upon a jury verdict judgment was rendered for the defendants and the plaintiff appeals.

Appellant was driving his truck east on Vickery Street. The truck and cargo weighed about 50,000 pounds. Appellees' truck was traveling east on the same street, ahead of appellant's truck, and on the extreme south or right side of the street, when it turned to the left and was struck by appellant's truck.

The jury found appellant's damages in the amount of $30,500.00. It found that appellees' driver was negligent in bringing his truck to a sudden stop after beginning the left turn, and that such negligence was a proximate cause of the collision; and in answer to issues Nos. 18 and 19 the jury found that the rate of speed at which appellant operated his truck as he approached appellees' truck was negligence, and was a proximate cause.

Appellant seeks a reversal on his contentions that there was prejudicial jury misconduct; that he was deprived of a fair and impartial trial because one of the jurors was disqualified; and that it was error to admit a statement made by appellant to the Industrial Accident Board in regard to the circumstances of the accident.

On the voir dire examination of the jury panel, appellant asked all the prospective jurors whether they were biased or prejudiced in any way against any such suits as this; and he asked that any member who felt that he was biased or prejudiced to hold up his hand. No one held up his hand. Mr. Fugate said that he was not biased and that he would give a fair verdict. He was taken on the jury.

According to the testimony of the juror Mrs. Kanouse, on the hearing of the motion for a new trial, 10 jurors first voted "No" on issue No. 18, that is, that the rate of speed at which appellant was driving his truck was not negligence; after that vote was taken, Fugate told the jurors that "we always had to keep foremost in our mind that the defendant was innocent until proven without a reasonable doubt that he was guilty, and he stated this all the way through our discussions both days that we were in session;" he said that if there was any reasonable doubt it had to be given to the defendant; he made that statement more than once, "all the way through;" witness changed her vote, and told the jurors that maybe she had been wrong, and she would give the defendant the benefit of the doubt; Fugate said three or four times during the two days deliberations that he did not believe in such suits; "we hadn't been in the jury room more than an hour at the very most when he made the first statement that * * * in other words, he wanted to hurry and get it over with, that it was absurd to him and that he just didn't believe in carrying suits through;" she believed he made that statement before any issues were answered; "he told us that he had been in a car accident and had been laid up for a matter of a few months, and * * * but he certainly didn't bring his case to trial or sue anyone; that he didn't believe in it, and that he and his family ate pancakes for quite a long time because of the accident;" that statement was made before issue No.

18 was answered; the juror Mrs. Miles told Fugate that he was prejudiced; during their deliberations Fugate said that he would not want anyone to bleed him for money; Fugate was very definitely the "low man" on the jury; he put an amount for appellant's damages on the board and said that is what it should be, and that he would not agree to anything else.

The juror Mrs. Miles testified in substance as follows: Soon after the jury retired to deliberate, Fugate said he did not believe such suits should be brought; before any issues had been answered, witness said to Fugate, "Well, you are prejudiced. You shouldn't have come * * *"; he said he was in an accident, and "he didn't sue because * * * he just didn't think that was right, and that his family ate pancakes, I believe he made that expression, for three months;" before a verdict was reached he said that he would not want anyone to bleed him for money; after a vote had been taken on No. 18, when witness answered "No", Fugate said the jurors were supposed to give the defendant the benefit of any reasonable doubt.

Fugate testified that he told the jurors that the reason he did not sue in connection with his accident was that the other party had no insurance and his lawyer said he could not collect; he did not tell them that they had to answer the issues on the basis that they had to find the defendant guilty beyond a reasonable doubt; when asked if he made any statement "along that line" he answered: "I did * * * I do recall that * * * it may be two or three times, and I don't recall on what issues there were, but I do recall they were pertaining to, I think, the defendant at that time, that in my opinion I couldn't find anyone guilty unless someone had proved them so beyond a reasonable doubt and in line with the credible testimony, and I still contend that, and I'll always contend that;" he told the jurors that in his opinion the defendant "should be given the benefit of a reasonable doubt

* * * and that's how it would influence my own opinion, and I did not try to impress it that it should influence anyone else;" a juror said that witness was prejudiced; he perhaps made the statement that he did not want anybody to bleed him for money; "I did say that this could exist throughout our world today; * * * and again, I state, to me, 'from a preponderance of the evidence, based on the credible testimony,' has the same type of implication as proven guilty or beyond a reasonable doubt. * * * Q. Mr. Fugate, you did make the statement to the other jurors during their deliberations and before a verdict was reached that you had to prove the defendant guilty beyond a reasonable doubt, and if there was any reasonable doubt, the defendant was supposed to be given the benefit of that didn't you? A. Based on the credible testimony and in my opinion, and that's the way I would vote."

Jeffreys, the foreman, testified that Fugate said that the defendant had to be proved guilty beyond a reasonable doubt; "Q. And he also said if there is any doubt you've got to give it to the defendant, didn't he? A. Whether he made a statement just like that or not, I don't recall. Q. Well, it was to that effect? A. To that effect." "Mr. Fugate, made a statement similar to this: That maybe a few years ago he or his family one had a wreck and that he didn't even ask anybody for anything * * * I told him that whether the man was guilty or not the only thing we had to go by was the charge that was given to us here as a jury;" witness told the jury "that they had to go by the court's charge * * *. Q. Didn't Mr. Fugate make a statement during the jury's deliberation and before you all returned your verdict to the effect that he did not believe in such suits himself? A. Well, he made the statement like I said in regards to reference of his personal accident;" witness would not say that he called Fugate down after he made each argument, but he did call him down and told him "this was what we had to go by."

The court filed findings of fact and conclusions of law as to the hearing on motion for a new trial. It was found: Juror Fugate told the jurors that the defendant should be found innocent unless proved guilty beyond a reasonable doubt, and that the defendant should be given the benefit of a reasonable doubt; on at least one occasion the foreman admonished the jury that they were controlled by the charge; during the jury's deliberation Fugate made the statement three or four times that he did not believe in such suits, and before the jury reached its verdict Fugate said that he would not want anyone to bleed him for money.

The court concluded that: the statements by Fugate as to the quantum of proof were improper, but did not constitute misconduct; but if they did constitute misconduct, from the record as a whole injury probably did not result to appellant; Fugate's statements as to his failure to file a suit in connection with his own accident did not show bias or prejudice and did not constitute misconduct; but if such statements did show misconduct, it was concluded that injury probably did not result therefrom.

■ By the provisions of Rule 327, Texas Rules Civil Procedure, jury misconduct is not a ground for new trial unless the misconduct is material, and it reasonably appears from the evidence both on the hearing for new trial and from the record as a whole that injury probably resulted to the complaining party. Since the jurors who testified said they followed the charge as to the quantum of proof necessary for their findings, we think the court's findings as to the gravity of the misconduct and lack of probable injury are warranted by the record.

■ However, we are of the opinion that the juror Fugate was biased and prejudiced against appellant's case, and was disqualified to sit on this jury. If that be so, we do not think it is necessary to show probable injury.

Article 1, sec. 15, of the State Constitution, Vernon's Ann.St., provides that the right of trial by jury shall remain inviolate. This means the right of trial by an impartial jury. Pierson v. State, 18 Tex. App. 524.

By the provisions of Article 2134, Vernon's Ann.Tex.Civ.St., a person is disqualified as a juror if he has a bias or prejudice in favor of or against either of the parties.

"A fair and impartial trial by a fair and impartial jury is what the law exacts, and this requirement becomes a delusion if men with bias or prejudice or preconceived ideas of the rights of one are allowed to sit in judgment on his case." Gulf, C. & S. F. Ry. Co. v. Dickens, 54 Tex.Civ.App. 637, 118 S.W. 612.

■ It is not necessary that the disqualifying bias relate solely to the party personally, but it may also relate to such party's case. Couts v. Neer, 70 Tex. 468, 9 S.W. 40; Houston & T. C. Ry. Co. v. Terrell, 69 Tex. 650, 7 S.W. 670.

1 Bouvier's Law Dictionary, p. 341, defines bias as follows: "A particular influential power which sways the judgment; an inclination or propensity of the mind towards a particular object."

" * * * the juror must be a perfect perpendicular between the parties as such and in such situation as to be swayed either one way or another. * * * it seems to us, when the statute says a certain cause shall disqualify a juror, if the cause is found to exist, that should end the matter." Kansas City Life Ins. Co. v. Elmore, Tex.Civ.App., 226 S.W. 709.

"If a juror, when tested on his voir dire concerning his qualifications to sit on the jury in a particular case, denies the existence of any bias or prejudice in his mind in favor of or against either party to the suit, and is accepted as a juror on such statement according to the great weight of authority when such bias or-

prejudice does exist, the party against whom the same exists can complain of the same as a ground for setting aside the verdict. He is not required to show that such bias or prejudice caused or contributed to cause the return of an unjust verdict in his case. It is sufficient that he, without his fault, has been deprived of the constitutional and statutory guaranty of a trial of his case before a fair and impartial jury." Rhoades v. El Paso & S. W. R. Co., Tex.Com.App., 248 S.W. 1064, 27 A.L.R. 1048. See, also, 39 Am.Jur., p. 65, sec. 45; Gulf, C. & S. F. Ry. Co. v. Dickens, 54 Tex.Civ.App. 637, 118 S.W. 612.

It is our opinion that the provision of Rule 327, requiring a showing of probable injury before a new trial will be granted, does not apply in the case of a disqualified juror. It is true that when the ground of the motion is that a juror gave an erroneous or incorrect answer on voir dire examination, said provision applies. But here the complaint is not that the juror gave an erroneous answer, although had he not done so, he would no doubt have been challenged either for cause or peremptorily; but the complaint here is that appellant, through no fault of his own, had to submit his case to a disqualified juror. The Rule does not provide that probable injury must be shown before a new trial may be granted when a disqualified juror sits on a case. Indeed, to so provide would be to change the law as it has existed since the adoption of the Constitution, and even before, because that instrument provides that the right of trial by jury shall *remain* inviolate. Moreover, the Rules do not change the grounds of disqualification set out in Article 2134, V.A.T.S. Swartout v. Holt, Tex.Civ.App., 272 S.W.2d 756.

The circumstances surrounding the admission of appellant's letter to the Industrial Accident Board will probably not arise in the same form on another trial.

The judgment is reversed and the cause remanded.