William O. COMPTON et al., Petitioners,

v.

Louis C. HENRIE, Respondent.

No. A–9110.

Supreme Court of Texas.

Jan. 16, 1963.

Rehearing Denied Feb. 13, 1963.

Rawlings, Sayers, Scurlock & Eidson, Brown & Murray, Fort Worth, for petitioners.

Stone, Parker, Snakard, Friedman & Brown, John G. Street, Jr., James A. McMullen, III, Fort Worth, Harris, Anderson, Henley & Rhodes, Dallas, for respondent.

SMITH, Justice.

This appeal grows out of a suit for damages for personal injuries and property loss resulting from a collision between two trucks. The truck owned by the defendant, Compton, was proceeding east on the extreme right side of the street when it attempted to negotiate a left turn, and was struck from behind by the truck owned by the plaintiff, Henrie.

The case was submitted to a jury upon special issues. The jury found that Compton's employee was negligent in bringing his truck to a sudden stop after beginning a left turn, and that such negligence was the proximate cause of the collision. However, the jury found that Henrie was guilty of contributory negligence, and judgment was rendered for Compton. On motion for new trial, and in the Court of Civil Appeals, Henrie sought reversal on the contentions of jury misconduct and juror disqualification. The Court of Civil Appeals reversed and remanded the case to the trial court on the theory that the juror Fugate, whose conduct is here in question, was disqualified from sitting on the jury under 'Article 2134, § 4 of Vernon's Annotated Civil Statutes. 357 S.W.2d 589.

The Petitioner, Compton, urges that Fugate was not disqualified under Article 2134, § 4 of Vernon's Annotated Civil Statutes. The Respondent, Henrie, contends that the juror Fugate was disqualified, but

that if he was not, then Fugate's actions amounted to misconduct which resulted in probable injury which would necessitate a new trial under Rule 327 of the Texas Rules of Civil Procedure. Hereinafter the parties will be referred to as Compton, Henrie, and Fugate; emphasis will be ours unless otherwise indicated.

### Juror Disqualification

We will first consider whether Fugate was disqualified from sitting on this jury under Article 2134, § 4 of Vernon's Annotated Civil Statutes which provides that a person is disqualified from serving as a juror if he " * * * has a bias or prejudice in favor of or against either of the *parties.*"

On the voir dire examination, Henrie's attorney asked all the prospective jurors whether they were biased or prejudiced in any way against such *suits* as this, and if any person were so biased or prejudiced to raise his hand. There was no response, and Henrie's attorney proceeded to trial under the assumption that none of the jurors were biased or prejudiced. In this regard Fugate testified on motion for new trial:

"Q: * * * do you remember me asking if any of the members of the panel were *biased or prejudiced in any way against any such suits as this?*

"A: I do, yes.

"Q: And after asking that question, did I ask any member of the panel who felt they were biased or prejudiced to hold up their hand? Did I ask that question?

\*      \*      \*      \*      \*      \*

"A: I don't remember just how it went, but I do know that I expressed the fact that I was not biased and that I would give a fair verdict."

In the hearing on motion for new trial, the juror Miles testified, in substance, as follows: Soon after the jury retired to de-

liberate, Fugate said he did not believe such suits should be brought; before any issues had been answered, witness was prompted to say to Fugate, "Well, you are prejudiced. You shouldn't have come * * *"; he said he was in an accident, and that "he didn't sue because * * * he just didn't think that was right, and that his family ate pancakes, I believe he made that expression, for three months"; before a verdict was reached, he said that he would not want anyone to bleed him for money.

According to the testimony of the juror Kanouse, Fugate said three or four times during the two-day deliberations that he did not believe in such suits; "We hadn't been in the jury room more than an hour at the very most when he made the first statement that * * * he wanted to hurry and get it over with, that it was absurd to him, and that he just didn't believe in carrying suits through"; she believed he made that statement before any issues were answered; "he told us that he had been in a car accident and had been laid up for a matter of a few months, and * * * he certainly didn't bring his case to trial or sue anyone; that he didn't believe in it, and that he and his family ate pancakes for quite a long time because of the accident."

Based on this testimony, the trial court made the following written findings of fact:

1. * * *

2. "Before the jury answered special issue No. 18 juror Mr. Fug*itt* made the statement that he didn't believe in such suits, according to Mrs. Kanouse. During the jury's deliberations he made that statement three or four times, according to testimony of Mrs. Kanouse.

3. "Before the jury answered special issue No. 18 juror Mr. Fug*itt* told the other jurors that he had an automobile accident and did not bring suit and that he and his family had to eat pancakes for

quite a long time because of the accident.

4. "During the deliberations of the jury and before the jury reached its verdict, juror Mr. Fug*itt*, made the statement that he would not want anyone to bleed him for money.

5. "During the jury's deliberations and before a verdict was reached, one of the jurors told juror Mr. Fug*itt* that he was prejudiced."

However, the trial court overruled the motion for new trial after concluding that Fugate's statements as to his failure to file suit in connection with his own accident did not show bias or prejudice, and did not constitute misconduct; but if it did, no injury was shown.

The Court of Civil Appeals reversed the trial court after holding that Fugate was biased and prejudiced against Henrie's *case*, and was thus disqualified to sit on the jury. Compton argues that though Fugate be disqualified, under Rules 327 and 434 of the Texas Rules of Civil Procedure probable injury must be shown before a new trial may be granted, and that no such showing had been made. The Court of Civil Appeals concluded that in cases of juror disqualification no injury need be established before a new trial may be granted.

Three questions are presented: (1) can it be said that Fugate was biased or prejudiced against the type of suit he tried; (2) if Fugate is biased or prejudiced toward the type of *suit* brought, as opposed to being biased or prejudiced toward the litigant personally, is he disqualified as a matter of law from jury service under Article 1, § 15 of the Texas Constitution, Vernon's Ann.St. and Article 2134, § 4, supra; and (3) where the juror is disqualified, is it necessary that probable injury be shown before a new trial may be granted?

■ To a greater or lesser extent, bias and prejudice form a trait common in all men; however, to fall within the disquali-

fying provision of Article 2134, § 4, supra, certain degrees thereof must exist. Bias, in its usual meaning, is an inclination toward one side of an issue rather than to the other, but to disqualify, it must appear that the state of mind of the juror leads to the natural inference that he will not or did not act with impartiality. Prejudice is more easily defined for it means prejudgment, and consequently embraces bias; the converse is not true. The establishment of such a state of mind would disqualify Fugate from serving on this jury as a matter of law. It is only where there are grounds for disqualification other than those provided for in the statute that the discretionary powers of the trial judge may be exercised, for a disqualification under Article 2134 does not involve a matter of discretion, but a matter of law. See: Preston v. Ohio Oil Co., Tex.Civ.App. (1938), 121 S.W.2d 1039, wr. ref., and cases cited therein.

■ Fugate's statements do not indicate prejudgment nor do they lead to the natural inference that he did not act with impartiality. An examination of the entire record demonstrates much better than words that Fugate did act in good faith and with impartiality. It discloses the actions of this juror which should constitute the final test, for actions are more credible evidence than loose words spoken in warm debate. The trial court has found that Fugate was not disqualified, and in such cases the appellate courts must consider the evidence in the light most favorable to upholding that ruling. In our opinion Fugate's statements do not conclusively establish a state of mind that would disqualify him as a matter of law.

■ Had it been established that Fugate was biased or prejudiced against this type of *suit,* Fugate would be disqualified from serving on this jury. It is well settled in this state that the statutory disqualification of bias or prejudice extends not only to the litigant personally, but to the subject matter of the litigation as well. Houston &

T. C. Ry. Co. v. Terrell, 69 Tex. 650, 7 S.W. 670 (1888); Couts v. Neer, 70 Tex. 468, 473, 9 S.W. 40 (1888); Rhoades v. El Paso & S. W. Ry. Co., Tex.Com.App. (1923), 248 S.W. 1064, 27 A.L.R. 1048; See generally: 27 A.L.R. 1052; 31 Am.Jur. 183; 50 C.J.S. Juries § 226e, p. 973. See also: Galveston, H. & S. A. Ry. Co. v. Manns (1904), 37 Tex.Civ.App. 356, 84 S.W. 254, wr. ref. In cases involving juror disqualification the Complainant need not establish that probable injury resulted therefrom before a new trial may be granted. Rhoades v. El Paso and S. W. Ry. Co., supra, Tex. Com.App., 248 S.W. 1064, 27 A.L.R. 1048; See also: Allmon v. Texas Electric Service Co., Tex.Civ.App. (1951), 242 S.W.2d 806, wr. ref., n. r. e.; Gulf, C. & S. F. Ry. Co. v. Dickens, (1909), 54 Tex.Civ.App. 637, 118 S.W. 612, no wr. hist.; 39 Am.Jur. 45, at p. 65; 63 A.L.R.2d 1061, 1064.

### *Jury Misconduct*

■ Our holding that the juror Fugate was not disqualified necessitates the consideration of any other grounds upon which the Court of Civil Appeals could be affirmed. Henrie, as appellant in the Court of Civil Appeals, and by application for writ of error in this court, contends that if Fugate's statements did not amount to disqualification, they nonetheless constituted jury misconduct that resulted in probable injury.

The trial court's charge stated the jurors should "keep these instructions in mind at all times and obey them *strictly* until you have returned your verdict herein." Definitions were given of words and phrases having legal significance, and the jury was instructed to refer to such definition for a proper understanding of such expressions where used in the submitted issues. Instruction 1 defined "preponderance of the evidence" as meaning from the *greater weight and degree of credible evidence* admitted under rulings of the court during the trial of the case.

In the hearing on motion for new trial the juror Kanouse testified that ten jurors .

first voted "no" and two voted "yes" on special issue No. 18 which was ultimately answered "yes" by all twelve of the jurors and resulted in finding the plaintiff, Henrie, guilty of contributory negligence. Mrs. Kanouse testified that Fugate told the jurors that "we always had to keep foremost in our minds that the defendant was innocent until proven without a reasonable doubt that he was guilty, and he stated this all the way through our discussion both days we were in session"; he said that if there was any reasonable doubt it had to be given to the defendant, Compton. The testimony of the juror Mrs. Miles supports Mrs. Kanouse in this regard.

Jeffreys, the foreman, testified that Fugate said that the defendant had to be proved guilty beyond a reasonable doubt;

"Q: And he also said if there is any doubt you've got to give it to the defendant, didn't he?

"A: Whether he made a statement just like that or not, I don't recall.

"Q: Well, it was to that effect?

"A: To that effect."

He also testified that Mr. Fugate made a statement similar to this:

"That maybe a few years ago he or his family one had a wreck and that he didn't even ask anybody for anything. * * * I told him that whether the man was guilty or not the only thing we had to go by was the charge that was given to us here as a jury."

The witness told the jury "that they had to go by the court's charge * * *."
Fugate testified that:

"* * * in my opinion *I couldn't find anyone guilty unless someone had proved them so beyond a reasonable doubt* and in line with the credible testimony, and *I still contend that, and I'll always contend that.* * * * [T]o me, 'from a preponderance of the evidence, based on the credible testi-

mony,' has the same type of implication as proven guilty or beyond a reasonable doubt.

* * * * * *

"Q: Mr. Fugate, you did make the statement to the other jurors during their deliberations and *before a verdict was reached* that you had to prove the defendant guilty beyond a reasonable doubt, and if there was any reasonable doubt, the defendant was supposed to be given the benefit of that, didn't you?

"A: Based on the credible testimony and in my opinion, and *that's the way I would vote.*"

The trial court filed findings of fact and conclusions of law as to the hearing on motion for new trial. It was found that Fugate told the jurors that the defendant should be found innocent unless proved guilty beyond a reasonable doubt, and that the defendant should be given the benefit of a reasonable doubt; on at least one occasion the foreman admonished the jury that they were controlled by the charge.

The trial court concluded that the statements by Fugate as to the quantum of proof were improper, but did not constitute misconduct; but if they did constitute misconduct, from the record as a whole, injury probably did not result.

Rule 327 of the Texas Rules of Civil Procedure provides that a new trial may be granted if there was some material act of misconduct on the part of the jury, and that misconduct resulted in probable injury to the complainant. The first question with which we are concerned here, is whether jury misconduct is established when one or more of the jurors expresses his position that a rule of law other than that contained in the court's charge should be the measure of proof required in determining the disputed fact issues.

█ It is settled that jury misconduct may only be proved by evidence of overt

acts, acts which are open to the knowledge of all the jury, and not alone within the personal consciousness of one. The mental operations of the individual juror are properly excluded. See: Texas Employers' Insurance Association v. McCaslin, 159 Tex. 273, 317 S.W.2d 916, 917; Trousdale v. Texas & New Orleans Railroad Co., 154 Tex. 231, 276 S.W.2d 242, affirming Trousdale v. Texas & New Orleans Railroad Co., Tex.Civ.App. (1953), 264 S.W.2d 489. Therefore, the line dividing what is properly admitted and considered and that properly excluded is that line which separates the mental processes of jurors from their overt acts.

The issue of misconduct on the part of Fugate is a close one, and the decision necessarily revolves around two considerations: Is this an instance of the jury going outside the charge and adopting its own rule of law as the measure of the facts, or did Fugate merely misconstrue the definition of "preponderance of the evidence" in the charge? We hold it to be the latter.

 The law is clear that a juror is not guilty of misconduct, and the verdict need not be set aside when one or more jurors simply misconstrue a portion of the court's charge and state the erroneous interpretation to the other members of the jury. It was held in Whited v. Powell, 155 Tex. 210, 285 S.W.2d 364 that:

> "* * * an express misconstruction of the court's charge, *which does not bring to the attention of the jury law or facts outside the record,* should not be regarded as jury misconduct within the meaning of Rule 327."

See also: Adams v. Houston Lighting & Power Co., 158 Tex. 551, 556, 314 S.W.2d 826; Pete-RAE Development Co. v. State, Tex.Civ.App. (1962), 353 S.W.2d 324; See Generally: Pope: "The Mental Operations of Jurors," 40 Tex.Law Rev. 849, 855 and cases cited therein.

We conclude that Fugate's statements amounted to nothing more than a misin-

terpretation of the court's charge; and were, consequently, not misconduct. Thus, we need not consider the issue of probable harm.

The judgment of the Court of Civil Appeals is reversed, and the judgment of the trial court is affirmed.

GRIFFIN, Justice (dissenting).

I disagree with the majority opinion, and agree with the opinion of the Court of Civil Appeals as found in 357 S.W.2d 589.