

# NUMBER 13-13-00481-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

SYLVIA ROGER, INDIVIDUALLY AND AS
PERSONAL REPRESENTATIVE OF THE
ESTATE OF JEAN LOUIS ROGER, SR.,
ET AL.,                                                    Appellants,

v.

BENJAMIN KARL MUMME, JR. AND
CAMERON INTERNATIONAL CORPORATION,          Appellees.

## On appeal from the 319th District Court
of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Perkes
Memorandum Opinion by Chief Justice Valdez**

We withdraw our opinion and judgment dated November 12, 2015, and issue the

following substitute opinion and accompanying judgment.

Appellants, Sylvia Roger, individually and as personal representative of the estate

of Jean Louis Roger Sr., Ashley Roger, Jean Roger Jr., and John Roger, brought suit

against appellees, Benjamin Karl Mumme Jr. and Cameron International Corporation, under the Texas Wrongful Death Act for the death of Jean Roger Sr. *See* TEX. CIV. PRAC. & REM. CODE ANN § 71.004(a) (West, Westlaw through 2015 R.S.). After a jury trial, the jury awarded compensatory damages to Sylvia Roger, Jean Roger Jr., and John Roger in the amount of $1,305,628.50. By two issues, appellants contend: (1) the trial court abused its discretion during jury selection by erroneously granting two challenges for cause and denying a third; and (2) the trial court erred in directing a verdict against Jean Roger Sr.'s daughter, Ashley Roger, on the basis that she does not qualify as a "child" under the Texas Wrongful Death Act. We affirm the trial court's judgment in part with respect to the appeal brought by all appellants but Ashley Roger. We reverse and render in part in accordance with Ashley Roger and appellees' March 29, 2016 settlement agreement.

## I. BACKGROUND

On March 5, 2012, Jean Louis Roger Sr. (Jean) suffered fatal injuries from a vehicle accident in Corpus Christi, Texas when a commercial truck, driven by Mumme, ran a red light and collided with his car. Jean was survived by his wife, Sylvia Roger, and his three children—Jean Roger Jr., John Roger, and Ashley Roger (Ashley). These surviving members of the Roger family sued appellees, seeking damages under the Texas Wrongful Death Act. After attempts to settle the case failed, the case was called for a jury trial.

During voir dire, over appellants' objections, the trial court struck veniremembers fifteen and seventeen for cause, but did not strike veniremember twenty-six. Thereafter, a jury was empaneled and the case proceeded to trial. At the close of the evidence, the

trial court submitted the claims of Sylvia Roger, Jean Roger Jr., and John Roger to the jury. However, the trial court directed a verdict against Ashley. This appeal followed.

## II.    JURY SELECTION

By their first issue, appellants contend that the trial court erred when it struck veniremembers fifteen and seventeen for cause but did not strike veniremember twenty-six. Specifically, appellants argue that veniremembers fifteen and seventeen were improperly struck for cause when "neither one of them remotely suffered from any disqualifying bias," while veniremember twenty-six should have been stuck for cause on account of his bias against "large damage awards in general and recoveries of mental anguish and pain and suffering in particular." Appellants argue that these three allegedly erroneous rulings revealed an impermissible double-standard for determining who sat on the jury, which ultimately resulted in a low-dollar verdict.

### A. STANDARD OF REVIEW

During jury selection, the parties may raise challenges for cause to disqualify veniremembers from serving on the jury. *See* TEX. R. CIV. P. 228, 229. A veniremember is disqualified to serve as a juror on a particular case if he or she has a bias or prejudice in favor of or against a party. *See* TEX. GOV'T CODE ANN. § 62.105(4) (West, Westlaw through 2015 R.S.). "[B]ias and prejudice form a trait common in all persons; however, to fall within the disqualifying provision of [section 62.105] certain degrees thereof must exist." *Gant v. Dumas Glass & Mirror, Inc.*, 935 S.W.2d 202, 207 (Tex. App.—Amarillo 1996, no writ) (citing *Compton v. Henrie*, 364 S.W.2d 179, 181–82 (Tex. 1963)). As such, the Texas Supreme Court has defined bias as "an inclination toward one side of an issue rather than the other, but to disqualify, it must appear that the state of mind of the juror leads to the natural inference that he [or she] will not or did not act with impartiality."

3

*Goode v. Shoukfeh*, 943 S.W.2d 441, 453 (Tex. 1997) (citing *Compton,* 364 S.W.2d at 182). Prejudice, which disqualifies a veniremember, means prejudgment and embraces bias. *Id.* This disqualification extends to bias or prejudice against the subject matter of the suit as well as against the parties to the suit. *Id.* Thus, "the key response that supports a successful challenge for cause is that the veniremember cannot be fair and impartial, because the veniremember's feelings are so strong in favor of or against a party or against the subject matter of the litigation that the veniremember's verdict will be based upon those feelings and not on the evidence." *Gant*, 935 S.W.2d at 208.

Bias, prejudice, or inability to follow the trial court's instructions "may not be discernible from a single statement or response to a general question." *Murff v. Pass*, 249 S.W.3d 407, 411 (Tex. 2008). A veniremember may appear biased as a result of inappropriate leading questions, confusion, misunderstanding, ignorance of the law, or merely "loose words spoken in warm debate." *Cortez ex rel. Estate of Puentes v. HCCI-San Antonio, Inc.*, 159 S.W.3d 87, 92 (Tex. 2005). In such situations, a veniremember may be "rehabilitated" through further questioning by counsel to show that he or she is not biased. *Id.* However, if the record clearly shows that a veniremember is materially biased, his or her recantation of that bias at the prodding of counsel will normally be insufficient to prevent disqualification of the veniremember. *Id.* To demonstrate a disqualifying bias, veniremembers are sometimes asked which party they think is starting out "ahead" in the case. *Id.* at 96. A veniremember's statement that one party is ahead may support grounds for disqualification when the statement is made before any evidence or information about the case has been disclosed. *Id.*

If a veniremember is biased or prejudiced as a matter of law, the trial court must disqualify that person from service on the jury. *Malone v. Foster*, 977 S.W.2d 562, 564

4

(Tex. 1998). If, on the other hand, a veniremember is not biased or prejudiced as a matter of law, then the trial judge must make a difficult factual determination as to whether the member is nevertheless sufficiently biased or prejudiced to merit disqualification. *Id*. Because trial judges are present in the courtroom and are in the best position to evaluate the sincerity and attitude of individual veniremembers, they are given "wide latitude in both conducting voir dire proceedings, [and] in determining whether a [venire]member is impermissibly partial [.]" *Murff*, 249 S.W.3d at 411. Thus, we must consider the entire examination in the light most favorable to the trial court's ruling, reversing only for an abuse of discretion. *Id.* A trial court abuses its discretion in refusing to disqualify a veniremember for cause if the record shows that the veniremember was not able or willing to set aside personal beliefs to act impartially. *Jordan v. Sava, Inc.*, 222 S.W.3d 840, 845 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

## B. ANALYSIS

### 1. Veniremember Fifteen

The trial court granted appellees' challenge for cause against veniremember fifteen based on the sympathy that he expressed for appellants. Jurors may not deliver a verdict based in any part upon sympathy. *See* TEX. R. CIV. P. 226a, § III (requiring the following jury instruction: "Do not let bias, prejudice or *sympathy* play any part in your decision.") (emphasis added). Appellants contend that veniremember fifteen did not suffer from a disqualifying bias because he was merely equivocal about his feelings of sympathy and reassured the trial court that he could follow the law. Concerning veniremember fifteen, he initially pledged his commitment to follow the law despite his personal sympathies for appellants:

> Q.     And with regards to sympathy . . . you would be able to set aside the sympathy side of it and weigh the evidence and listen to the evidence

5

that I [appellants' counsel] put on about my client's harms and losses?

A.    Right.

Q.    And not factor in sympathy but just weigh your verdict on the evidence?

A.    (Nods head.)

Q.    You believe you could do that?

A.    Right.

Q.    Okay. And that's the—you have a firm belief of that right now, right?

A.    Right.

Q.    And despite any questions that might be asked of you later on, you will be able to follow the Court's instructions and follow the law and listen to the evidence and not let sympathy weigh in on your verdict?

A.    All right.

Q.    Correct.

A.    (Nods head.)

However, the record reflects that after veniremember fifteen pledged his commitment to set sympathies aside and follow the law, he admitted during appellees' voir dire examination that sympathy would affect his ability to fairly and impartially judge the facts of the case:

Q.    [Y]ou said [that] you had had a lot of sympathy for [appellants]; is that correct?

A.    Correct.

Q.    You understand the loss that they've suffered, right?

A.    Right.

Q.    You understand that [Jean] was in the hospital for five days before he passed?

6

A.  Right.

Q.  Do you think that hearing that sort of evidence would draw on the sympathy that you already feel for the [appellants]?

A.  That's hard.  Yeah.

Q.  Do you think those sort of facts would magnify the sympathy that you feel for the [appellants]?

A.  Yeah, I—yeah, I think so.

Q.  Do you think that that sympathy might be magnified to such an extent that you couldn't fair[ly] and impartially judge the facts that you hear in this case?

A.  I would—that's really hard, so it kind of would be. I'm trying to—trying to still be impartial to both sides.  But yeah, when you think about it a little bit more, that's—yeah.

Moreover, later in his voir dire examination, veniremember fifteen confirmed that appellants were "already ahead" of appellees and that this would affect his verdict. Specifically, he admitted that appellants' head-start would affect his ability to "get there" (to a true result) after the presentation of evidence:

Q.  You want to do the right thing?

A.  Right.

Q.  But what you're thinking is that maybe I can't get there, maybe [appellants are] already ahead of [appellees].  Is that correct?

A.  Okay.  Yeah, I believe so.[1]

---

[1] Citing *Cortez ex rel. Estate of Puentes v. HCCI-San Antonio, Inc.*, appellants argue that the veniremember's statement that appellants were "already ahead" did not indicate a disqualifying bias. *See* 159 S.W.3d 87, 94 (Tex. 2005).  We disagree.  In *Cortez*, the Texas Supreme Court held that a veniremember's "leaning" statement that one party is ahead does not constitute disqualifying bias if the statement merely indicates an opinion about the evidence.  *See id.*  In that case, the challenged veniremember was in a position to express an opinion about the evidence because counsel had already given "an extended and emotional opening statement summarizing the facts of the case to the venire." *Id.* According to the Court, the veniremember's statement that one party "would be starting out ahead" of the other party was merely a comment on the evidence—evidence which counsel had previewed to the venire during his extended and emotional opening statement.  *Id.*  Thus, the Court found the statement to be more of a preview of a veniremember's likely vote than an expression of an actual bias.  *Id.*  Here, by contrast, veniremember fifteen had heard only a brief allusion to the damages dispute.  His statement could not represent the kind of "opinion about the evidence" or "preview of a veniremember's likely vote" that was

In *Cortez*, the Texas Supreme Court observed that "veniremembers may be disqualified even if they say they can be 'fair and impartial,' so long as the rest of the record shows they cannot." *Cortez ex rel. Estate of Puentes*, 159 S.W.3d at 93. In view of the entire voir dire examination, this observation rings true here—where the veniremember followed up his initial pledge of fairness and impartiality with affirmations that appellants were "already ahead" of appellees and that he could not set sympathies aside. Viewing the evidence in the light most favorable to the trial court's ruling, we conclude that the trial court did not abuse its discretion in finding that veniremember fifteen could not act with impartiality. *See id.* at 95.

### 2. Veniremember Seventeen

The trial court also granted appellees' challenge for cause against veniremember seventeen based on the sympathy that he expressed for appellants. Appellants argue that veniremember seventeen did not suffer from a disqualifying bias because, although he "initially equivocated on whether he would be able to set sympathetic feelings aside, he ultimately stated unequivocally that he could do so and would decide this case based on the evidence, the law and the [trial court's] instructions."

During the appellants' initial voir dire, veniremember seventeen stated that feelings of sympathy would probably affect his ability to be a fair juror. Appellants then attempted to rehabilitate veniremember seventeen by eliciting the following responses:

> Q.      [D]o you believe you could weigh the evidence fairly for both sides in this case? Do you not?

---

involved in *Cortez*. Therefore, we cannot agree with appellants that the veniremember's leaning statement did not indicate a disqualifying bias. In any event, the veniremember's statement was not the only evidence bearing on his bias because he admitted that sympathy would affect his ability to fairly and impartially judge the facts of the case. Consequently, even without considering the veniremember's leaning statement, the trial court had other evidence to find disqualifying bias.

8

A.    I'm not sure.

Q.    Okay. Tell me why it is you're not sure.

A.    I'm a very sympathetic person, a very sensitive person.

Q.    Okay. And—

A.    I have a lot of feelings, yeah.

. . . .

Q.    But . . . even having those feelings . . . do you believe you could listen to the evidence and hear all the evidence and then just render or make your judgment based on just—on the evidence?

A.    Probably so, yes.

However, after appellants attempted to rehabilitate veniremember seventeen, he later admitted that there was a "strong chance" that his feelings of sympathy and sensitivity would prevent him from following the trial court's instructions. We cannot agree with appellants that veniremember seventeen "unequivocally" stated that he could decide the case based on the evidence and not on sympathy when he stated that there was a "strong chance" he would not be able to do so. The judge had the benefit of observing firsthand the demeanor of veniremember seventeen in making the factual determination as to whether he was sufficiently biased to merit disqualification. *See Gen. Motors Corp. v. Burry,* 203 S.W.3d 514, 547 (Tex. App.—Fort Worth 2006, pet. denied) (observing that "[b]ecause we were not in a position to observe veniremember seventeen as the trial court was, we know nothing about her demeanor, expressions, tone, or vocal inflection" when she stated that she did not think she would be able to set her sympathies aside). Viewing the entire examination in the light most favorable to the trial court's ruling, we cannot conclude that the trial court abused its discretion in finding that veniremember seventeen could not act with impartiality.   *See Cortez,* 159 S.W.3d at 94.

9

### 3. Veniremember Twenty-six

During voir dire examination, veniremember twenty-six caught the attention of the parties because of his views about lawsuit abuse, damage amounts, and his membership in "Bay Area Citizens Against Lawsuit Abuse" (BACLA). The trial court overruled appellants' challenge for cause against veniremember twenty-six. When, as here, the trial court overrules a challenge for cause, there is "an implied finding that bias or prejudice does not exist such that it constitutes disqualification." *Gant*, 935 S.W.2d at 207. Appellants challenge the trial court's implied finding, arguing that veniremember twenty-six was disqualified as a matter of law because he "repeatedly (and candidly) admitted that he was biased and prejudiced" against appellants on a pivotal issue in the case—damages. In support of their position, appellants point to the following voir dire examination, which appellants contend demonstrated his bias "against large damage awards in general and recoveries of mental anguish and suffering in particular":

Q. You also answered that you believe that there should be upper limits with regards to jury verdicts. Do you recall that?

A. Right. Yes.

Q. Okay. And what do you mean? Explain that to me.

A. Well, if you have—certainly you have damages, okay? For instance, a husband dies. He was going to put those kids through college, and he was going to—all of that is fair game, you know. But then you get into pain and suffering. Well, how much is reasonable, $100,000, $10 million, $500 million? You get into excessive requests. And so that's what. . .

Q. And you believe that they're, in your opinion—

A. That there should be limits to that.

Q. All right.

A. Because—because in my mind what people don't understand is money doesn't come out of thin air. You're taking money away from

10

somebody else, right? Somebody had to earn that money, somebody is going to pay higher insurance costs. Maybe a business can't start up because he can't afford the insurance. Maybe a company won't give raises, won't hire ten people. There are real consequences to settlements. Money does not appear out of thin air. You're taking it from one person and giving to another. And so it has to be fair and balanced. Just like we talked about the law being fair and balanced.

Q. Okay. And that goes along with you said settlement, but that goes along with your ability to render at least a verdict with regards to the type of things you're talking about? The mental anguish or the pain and suffering?

A. Right.

Q. And the fact that that money doesn't make the pain and suffering go away, there are situations where that's just inappropriate?

A. Right.

Q. Okay.

A. I mean, you can compensate for some things. You can make an attempt to help out some. But it wouldn't matter if you gave them Fort Knox.

Q. Okay.

A. You know, the loss is there. You can't make up for that loss.

Q. And despite whatever evidence I put on with regards to those types of losses, that's how you feel?

A. Right.

Q. Okay. And nothing is going to change your mind on that?

A. No. I mean, I feel like I could hear evidence, and I'm as sympathetic—or empathetic as anybody else. I have six you [sic] children, you know. I've lost family members in automobile accidents, you know. But . . .

Q. And that I appreciate. And I'm focusing on just the fact with regards to your association with BACLA and your feelings with respect to limits on those—you know, the—we call the intangible, the non-economic damages such as pain and suffering or mental anguish. You absolutely believe that there should be caps on that—

11

A.    Yes, I do.

Q.    —based on all the feelings you talk about?

A.    Yes, I do.

Q.    You know, because it comes from somewhere.    And you can't replace the pain.    So therefore, no matter what evidence I put on with regards to their harms and losses, that's still how you feel?

A.    That's how I feel.

Appellants assert that veniremember twenty-six revealed an "unshakeable conviction" regarding the nature and amount of damages appropriately recoverable in a wrongful death case and merited disqualification.    Viewing the examination quoted above in isolation, it is definitely arguable that veniremember twenty-six appeared to have a disqualifying bias on the issue of damages.    However, our standard of review directs that we must view not only the isolated section quoted above, but his *entire* voir dire examination to determine whether the trial court abused its discretion in not disqualifying him.    *See Murff*, 249 S.W.3d at 411.    In *Cortez*, the Court held that a veniremember who expresses an initial apparent bias may be rehabilitated through further questioning to demonstrate that the member is not in fact biased.    *Cortez ex rel. Estate of Puentes*, 159 S.W.3d at 91.    Here, through further questioning by appellees' counsel, veniremember twenty-six was allowed to clarify what, at first blush, may have seemed like disqualifying bias:

Q.    All right.    As a juror, your responsibility as a juror would be to weigh the evidence in the case fairly and make a decision based on the evidence in this case.    Now, I understand you have feelings about, you know, lawsuit abuse.

A.    Right.

12

Q.     And nobody is making a claim of lawsuit abuse here.  You have feelings about mental anguish damages.  This is a case of mental anguish.

A.     Right.

. . . .

Q.     So now the question is this, can you be a fair and impartial juror in this case based on the evidence in this case?

A.     Yes, I feel like I could.

Q.     And if there is a blank, if the Court were to give you an instruction, a blank to award damages, for whatever whether it be pain and suffering or past medical expenses or whatever, and the plaintiffs have presented evidence that supports damages, would you as a juror be able and willing to deliberate with the other 11 jurors about what to—how to answer that question?  That's really all we're asking here.

A.     Yes.  I mean, I would do that.  I'm an engineer.  I mean, engineers look at all the facts and evidence and make decisions every day.  That's what we do.

Q.     You're not pre-com[m]itted to any particular decision in this case, are you, sir?

A.     No.

Q.     And you've not pre-judged anybody in this case?

A.     No, I have not.

Q.     And you feel like you can weigh the evidence and be fair in this case?  Is that what I'm hearing?

A.     Yes.  Yes, I could

Thus, veniremember twenty-six clarified that he was "not pre-committed to any particular decision in this case," that he had "not pre-judged anybody in this case," and that he could "weigh the evidence and be fair."  Citing *Cortez*, however, appellants argue that the veniremember's responses were ineffective to remove a disqualifying bias that he initially expressed because his responses were made at the "prodding" of appellees' counsel.

*See id.* at 92*.* (observing that "if the record, taken as a whole, clearly shows that a veniremember was materially biased, his or her ultimate recantation of that bias *at the prodding of counsel* will normally be insufficient to prevent the veniremember's disqualification") (emphasis added). We disagree. The record reflects that after appellees' counsel allegedly "prodded," veniremember twenty-six maintained that he could follow the law and the evidence—even in response to subsequent leading questioning by appellants' counsel:

Q. With respect to those extrinsic items you talked about; increase in insurance; you know, the failure for a company to be able to hire individuals, things of that nature, those extrinsic issues you would not be able to set aside in your deliberations in this case, correct?

A. You follow the law, not your opinion. I have opinions on things, that's my opinion.

. . . .

A. If I was given instruction: Here's the law, here's the evidence. You follow the law and the evidence. You don't—as a juror I'm not making up law. I'm not—you know, I'm following law and evidence.

. . . .

A. I mean, we're talking theoretical here, and so I would listen and see what the law applied and stuff. But, I mean, I don't want to be dishonest in any way, I do have a problem with enormous settlements. I mean, you can destroy a company, you can destroy a lot of other lives.

. . . .

A. I mean, I would look at the—the whole picture.

. . . .

14

A.      You know, and say what's fair.  I mean, if you're asking the jury to decide what's fair, I would try to look at the whole picture as to what was fair.[2]

As the Texas Supreme Court stated in *Cortez*, the veniremember's willingness to try to make his decision based upon the evidence and the law is "all we can ask of [him]."[3] *See id.* at 93 (observing that a trial court has discretion to refuse to disqualify a veniremember who indicates a "willing[ness] to try to make his decision based on the evidence and the law" even if he initially expresses an apparent bias); *see also Powers v. Palacios*, 794 S.W.2d 493, 495 (Tex. App.—Corpus Christi 1990, writ granted) (holding that the trial court did not abuse its discretion in refusing to strike three veniremembers who stated that they would have difficulty awarding damages when all three later stated that they could hear the evidence presented and be fair and impartial), *rev'd on other grounds*, 813 S.W.2d 489 (Tex. 1991); *Jones v. Lakshmikanth*, No. 13-03-662-CV, 2005 WL 2036739, at *4 (Tex. App.—Corpus Christi Aug. 25, 2005, no pet.) (mem. op.) (holding that an "expression of generic discontent with malpractice cases" was not disqualifying when the veniremember "twice responded that she could be fair" and promised that "she could be fair to both sides and judge the evidence fairly"); *Oliver v. Long Island Owners*

---

[2] In their reply brief, appellants note that not all of the veniremember's responses during this last exchange demonstrated that he could follow the law and the evidence.  For example, appellants highlight the veniremember's affirmative response to the following question:  "Despite what the law says, you have a predisposition with regards to limits on what you believe would be appropriate and for things like we talked about, mental anguish and pain and suffering, correct?"  It is true that not all of the veniremember's responses were consistent during this last exchange.  But it is also true that all of appellants' questions to the veniremember were leading in nature and phrased so as to elicit a specific response.  Despite the leading nature of appellants' questioning, the majority of the veniremember's responses were consistent on the issue of whether he could follow the law and the evidence.  And to the extent that the veniremember was inconsistent during this last exchange, the trial court was in the best position to evaluate his credibility and resolve conflicts in his testimony.  *See Murff v. Pass*, 249 S.W.3d 407, 411 (Tex. 2008).  Viewing the evidence in the light most favorable to the trial court's ruling, the trial court apparently resolved any inconsistency in the veniremember's testimony against a finding of disqualification.  *Id.*

[3] Indeed, as appellees note in their appellate brief, it may be the case that "[veniremember twenty-six] felt legislators should change the law to address lawsuit abuse.  But [his] views about what the law *should be* were far different than his views on jury service—i.e., about whether, once the judge instructed him on existing law, he would be able to serve as a *fair factfinder*."

15

*Ass'n, Inc.*, 13-08-00385-CV, 2009 WL 1740828, at \*4 (Tex. App.—Corpus Christi June 11, 2009, pet. denied) (mem. op.) (holding that the trial court did not abuse its discretion in refusing to strike two veniremembers who initially stated that they could not award ten million dollars in damages even with proof when, after further questioning, they confirmed that they would follow the law and award damages according to the evidence). Furthermore, the judge had the benefit of observing firsthand the demeanor of veniremember twenty-six in making the factual determination as to whether he was sufficiently biased to merit disqualification. *See Burry*, 203 S.W.3d at 547.

Accordingly, we find that the trial court, being in a better position than us to observe the sincerity and capacity of veniremember twenty-six for fairness and impartiality, properly exercised its discretion in not disqualifying him. *See Cortez*, 159 S.W.3d at 94. We therefore overrule appellants' first issue.

### III.    DIRECTED VERDICT AS TO ASHLEY ROGER

By their second issue, appellants challenge the trial court's decision to direct a verdict against Ashley Roger with respect to her claim under the Texas Wrongful Death Act. *See* TEX. CIV. PRAC. & REM. CODE ANN § 71.004(a). On April 21, 2016, after we issued our previous opinion, Ashley Roger and appellees filed a joint motion requesting that we render a judgment dismissing Ashley Roger's action pursuant to a settlement agreement. The joint motion concerns Ashley Roger only. We GRANT the motion and RENDER a judgment dismissing Ashley Roger's action in accordance with their settlement agreement. *See* TEX. R. APP. P. 42.1(a)(2)(A) (providing that an appellate

16

court may dispose of an appeal by rendering a judgment that effectuates the parties' settlement agreement).[4]

## IV. CONCLUSION

We affirm the trial court's judgment in part with respect to the appeal brought by all appellants but Ashley Roger. We reverse and render in part in accordance with Ashley Roger and appellees' March 29, 2016 settlement agreement. See *id.*

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
19th day of May, 2016.

---

[4] We also DENY appellees' December 11, 2015 motion for rehearing in light of the parties' settlement agreement.

17